PEOPLE v McKENDRICK

Docket No. 120563. Submitted October 3, 1990, at Lansing. Decided
April 1, 1991, at 9:00 A.M. Leave to appeal denied, 439 Mich 856.

James C. McKendrick, a resident of the City of Ferndale, was
charged in the 43rd District Court with possession with intent
to deliver marijuana after a search of his home pursuant to a
warrant uncovered marijuana and equipment used in the in-
door cultivation of marijuana. The district court suppressed
evidence obtained in the search of the defendant's home, ruling
that the search warrant was invalid because it was obtained
through the use of evidence tainted by the trespass upon and
illegal search of the defendant's property by lawn-care employ-
ees acting as agents of the City of Ferndale in cutting the
defendant's grass pursuant to a City of Ferndale ordinance. In
concluding that the lawn-care employees had trespassed and
conducted an illegal search, the district court determined that
the enforcement provisions of the Ferndale ordinance did not
afford the defendant procedural due process. The Oakland
Circuit Court, Alice L. Gilbert, J., subsequently denied the
prosecutor's application for leave to appeal from the order of
suppression, finding the application to be untimely. The prose-
cutor appealed to the Court of Appeals by leave granted.

The Court of Appeals *held:*

The district court clearly erred in suppressing the evidence.
The Ferndale ordinance is not violative of due process, and the
lawn-care employees did not violate the defendant's Fourth
Amendment rights in entering his property.

1. A community's desire to enhance the scenic beauty of its
neighborhoods through a specific enactment such as the ordi-
nance in this case is a legitimate feature of the public welfare
and is enforceable through the exercise of the municipality's
police power.

2. Acts in violation of a valid statute enacted to preserve the
public health, safety, and welfare constitute a public nuisance

REFERENCES

Am Jur 2d, Nuisances §§ 50 *et seq.,* §§ 411 *et seq.;* Searches and
Seizures §§ 10, 13, 20, 23.

See the Index to Annotations under Nuisance; Search and Seizure.

from which harm to the public is presumed to flow. A statute authorizing the destruction of property as a public nuisance satisfies the requirements of due process where, as in this case, there is provision for an investigation and ascertainment of the facts by a public officer, notice to the owner, and appeal of the public officer's decision to a court.

3. A search undertaken by a private individual with the intent of assisting the police in their investigative efforts is proscribed by the Fourth Amendment. However, although the lawn-care employees acted as agents of the City of Ferndale in entering the defendant's property, they did not do so with the intent of conducting a search or of aiding the city in its investigative efforts. The defendant has failed to make the requisite showing of state action for purposes of sustaining a Fourth Amendment challenge.

4. The observation of the defendant's basement by a detective standing on the property of an adjoining neighbor transgressed no Fourth Amendment protection. Unenhanced visual observations of objects and activities inside a person's home from a location where the observer may properly be does not violate the Fourth Amendment.

5. The prosecution's procedural claim that the circuit court abused its discretion in denying the application for leave to appeal from the district court's order was rendered moot by resolution of the prosecution's substantive claims.

Reversed and remanded for trial.

1. CONSTITUTIONAL LAW — MUNICIPAL CORPORATIONS — NOXIOUS VEGETATION ORDINANCES — DUE PROCESS.

A municipal ordinance requiring an owner or occupier of property to keep the height of grass on the property within a certain maximum and to conform the property to that requirement within a given period upon notice of violation or risk forced compliance by the municipality satisfies the requirements of due process where there is provision for an investigation and ascertainment of the facts by a public officer, notice to the owner, and appeal of the public officer's decision to a court (US Const, Ams V, XIV; Const 1963, art 1, § 17).

2. SEARCHES AND SEIZURES — MUNICIPAL CORPORATIONS — NOXIOUS VEGETATION ORDINANCES — ABATEMENT OF NUISANCES.

Employees of a lawn-care company under contract with a municipality to enter private property to abate nuisances pursuant to a noxious vegetation ordinance are not engaged in a search or seizure proscribed by the Fourth Amendment where their sole intent is to abate the nuisance (US Const, Am IV).

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Michael J. Modelski,* Chief, Appellate Division, and *Richard H. Browne,* Assistant Prosecuting Attorney, for the people.

*Daniel E. Manville,* for the defendant.

Before: WAHLS, P.J., and DOCTOROFF and G. S. ALLEN,* JJ.

WAHLS, P.J. The people appeal by leave granted from an October 27, 1988, 43rd District Court order granting defendant's motion to suppress evidence obtained pursuant to a search warrant, and from an August 15, 1989, Oakland Circuit Court order denying the people's untimely application for leave to appeal from that district court order. We reverse and remand for further proceedings consistent with this opinion.

According to the preliminary examination transcript, on August 15, 1988, Brian Mellert, the grass and weed inspector for the City of Ferndale, was making routine inspections when he observed that defendant's lawn was in violation of a city ordinance prohibiting grass or weeds having a height greater than seven inches. Ferndale Ordinances §§ 20-42, 20-43. Mellert sent a violation notice to defendant, informing him that the grass had to be cut within ten days. Ten days later, Mellert returned to defendant's residence and observed that the grass had not been cut. Thereafter, Mellert issued a "cut order" and assigned Forsee Lawn Service to execute it. Mellert did not suspect there was anything illegal on defendant's property and did not instruct Forsee Lawn Service to search defendant's property.

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

David Forsee, co-owner of Forsee Lawn Service, testified that he had a contract with the City of Ferndale to execute cut orders pursuant to the weed and grass ordinance. Forsee was never instructed by the city to conduct searches when he or his employees were cutting grass and weeds. However, when Forsee first acquired the contract with the city, he inquired on his own initiative with regard to the appropriate procedure if he or one of his employees were to discover anything illegal. Forsee was informed by a city employee that, if the situation arose, he should file a police report.

On August 26, 1988, pursuant to the cut order and a court order permitting entry onto defendant's property, Forsee and his employee, Dorman Smith, went to defendant's residence, knocked on the door, and, after receiving no answer, proceeded to cut defendant's grass. Smith was using a "weed whipper" along the backyard fence of defendant's property when he discovered several marijuana plants in buckets amongst the overgrown grass. Smith informed Forsee of his discovery and then continued to cut the grass. Subsequently, Forsee telephoned the police.

Detective George Hartley of the Ferndale Police Department was assigned to investigate Forsee's report. The detective spoke with Smith, who provided two buckets containing marijuana plants which Smith had taken from defendant's property. In addition, Smith disclosed that he looked through a basement window of defendant's home and viewed numerous plants which also appeared to be marijuana.

On the basis of the information Smith provided, the detective went to defendant's residence and knocked on the door. Receiving no answer, Detective Hartley walked along an adjacent neighbor's

property, looked through defendant's open basement window, and observed several marijuana plants in defendant's basement.

Supported by Smith's evidence, as well as his own observations, Detective Hartley obtained a search warrant, which he executed at defendant's residence on August 26, 1988. The detective entered the residence and discovered a large quantity of marijuana and equipment used in the indoor cultivation of marijuana. Detective Hartley estimated the total amount of marijuana to be approximately twenty-five to thirty pounds. The detective opined that the marijuana was being cultivated for sale. In total, there were thirty to thirty-five marijuana plants. Some of the plants had been cut and were drying on a table, while many, too young to be harvested, were still growing.

Subsequently, defendant was arrested and charged with possession with intent to deliver marijuana, MCL 333.7401(2)(c); MSA 14.15(7401)(2)(c).

Following the preliminary examination, defendant moved to suppress the evidence obtained by the police on the basis that the search was illegal. Specifically, defendant argued that the grass cutters were acting for the state when they trespassed on his property and conducted an impermissible search of the premises. Defendant's allegation of trespass was based on the contention that the ordinance permitting the city to enter his property was unconstitutional because it did not afford him due process.

The district court granted defendant's motion to suppress on the ground that there was state action in that Forsee and Smith were acting under the authority of the city, which had contracted with Forsee Lawn Service to cut the grass on defen-

dant's property. Second, the district court found that Forsee and Smith, in their capacity as agents of the city, impermissibly entered defendant's property, thereby committing a trespass. Specifically, the court stated that before the city or its agents could enter defendant's private property, the alleged violation of the city ordinance had to be prosecuted by means of a hearing. If, following a hearing, defendant was found to be in violation of the ordinance, the court could take remedial action and order defendant to cut his grass or to pay a fine and costs.

Next, in reliance on *California v Ciraolo,* 476 US 207; 106 S Ct 1809; 90 L Ed 2d 210 (1986), the district court ruled that, even if the city's entry was not deemed a trespass, the curtilage of one's property is a constitutionally protected area where one would have a reasonable expectation of privacy. Finally, the district court found that, because of the illegal search, the search warrant that was subsequently issued was tainted and, therefore, invalid.

On appeal, the people first argue that the district court erred in granting defendant's motion to suppress. We agree.

This Court will not reverse a denial or a grant of a motion to suppress evidence unless the trial court's decision is clearly erroneous. *People v Burell,* 417 Mich 439, 448; 339 NW2d 403 (1983); *People v Russo,* 185 Mich App 422, 434; 463 NW2d 138 (1990); *People v Malone,* 180 Mich App 347, 355; 447 NW2d 157 (1989). Therefore, the trial court's decision will be affirmed unless, upon a review of the record, this Court is left with a definite and firm conviction that a mistake was made. *People v Toohey,* 183 Mich App 348, 352; 454 NW2d 209 (1990), lv gtd 436 Mich 880 (1990).

Where tainted information comprises more than

a very minor portion of that found in an affidavit supporting a search warrant, the warrant will be held invalid. *United States v Langley,* 466 F2d 27, 35 (CA 6, 1972). In this case we conclude that the search warrant was valid because the information substantiating the affidavit in support of the search warrant was legally obtained.

Initially, we will address defendant's assertion that the Ferndale weed and grass ordinance is unconstitutional because it does not afford procedural due process.

The ordinance in question provides, in part, as follows:

### ARTICLE III. NOXIOUS VEGETATION

Sec. 20-38. Definitions

\* \* \*

Weeds shall include all weeds, grass, brush, wildings, second growth, rank vegetation or other vegetation that is not growing in its proper place, having a greater height than seven (7) inches or spread of more than seven (7) inches.

Sec. 20-39. Responsibility.

(a) Each person occupying a piece of property and the owners of vacant properties shall maintain all yard spaces, including such portions of any street or alley abutting such lands dedicated for public use that would be attached to the said parcel of land upon the vacation of the public rights to the street or alley, that is not otherwise paved or improved, in a condition that will not detract from the appearance of the neighborhood.

\* \* \*

Sec. 20-40. Growth—Unlawful to permit.

It shall be unlawful for any person having control of any occupied or unoccupied lot or parcel of land or any part thereof, in the city, to permit or maintain on any such lot or parcel of land any

growth of weeds or poisonous or harmful vegetation.

Sec. 20-41. Same—Duty to remove.

Each person having control of any occupied or unoccupied land shall remove or destroy, or cause to be removed or destroyed, any and all growth of weeds or poisonous or harmful vegetation and shall maintain such parcel of land free from any growth of such weeds or poisonous or harmful vegetation, and each person having control of any parcel of land shall cut and remove or cause to be cut or removed or destroyed by other lawful means such weeds, poisonous or harmful vegetation as often as may be necessary to comply with the provisions of this article; provided that, cutting, removing or destroying such weeds or poisonous or harmful vegetation shall occur as often as necessary between May 1 and October 31 in order to keep such vegetation from attaining a height greater than seven (7) inches or attaining a spread of over seven (7) square inches, which shall be deemed to be in compliance with this article.

Sec. 20-42. Annual notice to comply with article provisions.

(a) The city manager shall give notice to the persons responsible for lands within the city once each year prior to May first by publishing at least two (2) times in a newspaper having general circulation within the city and by such other means as the city council shall direct; said notice shall declare the provisions of this article and the penalties for failure of compliance or the violation thereof.

(b) The notice shall contain the provision that if the requirements of this article are not complied with within ten (10) days after the date of the notice and maintained free from weeds, or poisonous or harmful vegetation from May 1 through October 31 of each year, without further notice, the city manager may cause such weeds or poisonous or harmful vegetation to be cut or destroyed, as required by the provisions of this article with the actual cost for such destruction and removal

plus an additional fee to cover inspection and other costs in connection therewith to be charged against the property.

Sec. 20-43. Failure of owner to destroy—Destruction by city; cost assessed against property.

(a) If a parcel of land has not been cleared of the weeds or poisonous or harmful vegetation, as provided in this article, within ten (10) days after the date of the notice in section 20-42 and maintained from May 1 through October 31 in a condition free from such weeds or poisonous or harmful vegetation, without further notice, the city manager may cause such weeds or poisonous or harmful vegetation to be cut or completely destroyed; provided that, in the case of poison ivy or other poisonous plants, he will cause such plants to be completely destroyed.

\* \* \*

Sec. 20-44. Same—Right of entry.

Because of the failure of the person responsible to carry out the provisions of this article the city or its employees or agents shall have the right to enter upon any private property not securely fenced or enclosed, for the purpose of cutting, removing or destroying any and all weeds, poisonous or harmful vegetation, and the city and its employees or agents shall not be liable for any damage to any plants or vegetation obscured by the growth of weeds, poisonous or harmful vegetation.

The term "property," as used in the Due Process Clause,[1] includes not only title and possession, but also embraces the concepts of dominion and control and the right to make legitimate use of one's property. *Rassner v Federal Collateral Society, Inc,* 299 Mich 206, 214; 300 NW 45 (1941). Thus,

---

[1] "No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law." [Const 1963, art 1, § 17; see also US Const, Ams V, XIV.]

[t]he right to full and free use and enjoyment of one's property in a manner and for such purpose as the owner may choose, so long as it be not for the maintenance of a nuisance injurious to others, is one of which he may not be deprived by government without due process of law nor may his property be taken by government without just compensation. [*Roman Catholic Archbishop of Detroit v Orchard Lake,* 333 Mich 389, 392; 53 NW2d 308 (1952).]

However, a property owner's right to such generally unrestricted use is subject to reasonable regulation by the state in the legitimate exercise of its police power. *Id.; Woodland v Michigan Citizens Lobby,* 423 Mich 188, 201; 378 NW2d 337 (1985); *People v Yeo,* 103 Mich App 418, 421; 302 NW2d 883 (1981), cert den 457 US 1134 (1982); reh den 458 US 1132 (1982). In determining the validity of an exercise of police power, a two-pronged analysis is applied: (1) whether the object of the ordinance is one for which police power may be properly invoked, and, if so, (2) whether there is a reasonable and substantial relationship between the exercise of the police power invoked and the object to be attained. *Yeo,* p 421; *Van Slooten v Larsen,* 86 Mich App 437, 445; 272 NW2d 675 (1978), aff'd 410 Mich 21; 299 NW2d 704 (1980), app dis 455 US 901 (1982).

In accordance with § 3(j) of the home rule cities act, MCL 117.3(j); MSA 5.2073(j), cities may enact and include in their charters provisions, predicated upon the sovereign power of government, which include the "protection of the safety, health, morals, prosperity, comfort, convenience, and welfare of the public, or any substantial part of the public," so long as they do not run contrary to the constitution or any general statute. *Cady v Detroit,* 289 Mich 499, 504-505; 286 NW 805 (1939), app dis 309 US 620 (1940). Accordingly,

> [o]rdinances having for their purpose regulated municipal development, the security of home life, the preservation of a favorable environment in which to rear children, the protection of morals and health, the safeguarding of the economic structure upon which the public good depends, the stabilization of the use and value of property, the attraction of desirable citizenship and fostering its permanency are within the proper ambit of the police power. [*Id.,* p 514.]

Additionally, this Court has held that a community's desire to enhance the scenic beauty of its neighborhoods through a very specific enactment is clearly a legitimate feature of the public welfare and is enforceable through the exercise of police power. *National Used Cars, Inc v Kalamazoo,* 61 Mich App 520, 523-525; 233 NW2d 64 (1975).

In the instant case, the general objective of the ordinance at issue is to require property owners to remove or destroy proscribed weeds, including overgrown grass. In the event of an owner's failure to comply, the ordinance provides for abatement of the violation by the city, its employees, or its agents. We conclude that such an objective is a proper exercise of municipal police power and that the provisions of the ordinance bear a reasonable and substantial relationship to its general objective.

Nevertheless, whenever a protected interest, i.e., life, liberty, or property, is implicated, the accordance of due process, including all its component parts, is constitutionally mandated. Thus, having found the ordinance in question to be valid on its face, we next determine what process is due and appropriate in the enforcement of the ordinance.

In Michigan, the common law prevails, except as abrogated by the constitution or a statute. *Stout v Keyes,* 2 Doug 184; 43 Am Dec 465 (Mich, 1845);

*Bugbee v Fowle,* 277 Mich 485, 492; 269 NW 570 (1936). At common law, harm to the public is presumed to flow from the violation of a valid statute enacted to preserve public health, safety, and welfare, and is characterized as a public nuisance. See *Attorney General ex rel Bd of Examiners in Optometry v Peterson,* 381 Mich 445, 465; 164 NW2d 43 (1969). It is well recognized in this jurisdiction that, as a general rule, municipalities have the power to provide for the summary abatement of nuisances by municipal officials. See MCL 247.61 *et seq.;* MSA 9.631 (1) *et seq.*[2]

Generally, special or summary proceedings for abatement of nuisances are valid where they afford the essential elements of due process of law, namely, notice and an opportunity to be heard. See *Yates v Milwaukee,* 77 US 497; 19 L Ed 984 (1871). A thorough discussion of the rules governing the balancing of the valid exercise of police power against the protection of an owner's right in his property is found in 58 Am Jur 2d, Nuisances, § 419, pp 996-997, which states:

> Generally, before the abatement of a nuisance, the property owner responsible for the nuisance is entitled to due process of law, that is, formal notice and hearing to determine whether the property is in fact a nuisance in most instances. In this regard, if possible, the owner of property should, before its destruction, be given a hearing upon the question whether his property is in fact a menace to the community. Notice is given to the wrongdoer so that he may have an opportunity to appear and be heard before the authorities proceed to abate, and anyone who destroys or injures private

---

[2] See specifically MCL 247.62; MSA 9.631(2), which states: "For the purpose of this act, 'noxious weeds' . . . or other plant which in the opinion of the governing body of any county, city, or village, coming under the provisions of this act is regarded as a common nuisance," and MCL 247.64(2); MSA 9.631(4)(2).

property in abating what legislative or administrative officials have determined to be a public nuisance does so at his peril, where there has been neither a previous judicial determination that such supposed nuisance is a public nuisance nor even an opportunity provided to the owner for an administrative hearing, with judicial review, on the question whether there is a public nuisance. *Requirements of due process are satisfied by a statute authorizing the destruction of property as a public nuisance where it provides for an investigation and ascertainment of the facts by a public officer, notice to the owner, and an appeal to the court from the decision.* [Emphasis added.]

The Ferndale noxious vegetation ordinance specifies the conditions which constitute a violation of the ordinance. Before enforcement of the act each year, a public notice is issued to the residents of the city. Additionally, those found by the weed and grass inspector to be in violation ·of the ordinance are mailed a notice informing them of the specific violation and giving them ten days in which to comply with the ordinance's provisions before abatement.

Here, a formal hearing before abatement hardly seems necessary. Because of the specificity of the ordinance, there is no need to determine whether an owner's property is in violation of the ordinance. Furthermore, violators are given sufficient notice of the violation, reasonable time in which to take steps to remedy the violation, and notice that a failure to comply with the ordinance will result in abatement by the city, its employees, or agents. Certainly, a property owner who disagrees with the violation determination could contact the weed and grass inspector for further clarification. Finally, those property owners found to be in violation of the ordinance have the right to appeal to the circuit court. See MCL 117.30; MSA 5.2110.

We conclude that due process in this case does not require a preabatement hearing and that defendant's constitutional guarantees were not infringed.

Next, defendant argues that the weed and grass cutters were acting for the state when they executed a search of his property without a warrant. Specifically, defendant argues that the grass cutters were not on his property just to cut grass, but were also there to aid the city in the investigation and discovery of illegal activity. We disagree.

The Fourth Amendment of the United States Constitution and the parallel provision of the Michigan Constitution guarantee the right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. The Fourth Amendment protection against unreasonable searches and seizures is a limitation on governmental action. Therefore, the touchstone of a reviewing court's Fourth Amendment analysis is always "the reasonableness in all the circumstances of the governmental invasion of the citizen's personal security." *Michigan v Long,* 463 US 1032, 1051; 103 S Ct 3469; 77 L Ed 2d 1201 (1983) (quoting *Terry v Ohio,* 392 US 1, 19; 88 S Ct 1868; 20 L Ed 2d 889 [1968]). However, the Fourth Amendment proscribes only government action and is not applicable to a search or seizure, even an unreasonable one, conducted by a private person not acting as an agent of the government or with the participation or knowledge of any government official. *United States v Jacobsen,* 466 US 109, 113-114; 104 S Ct 1652; 80 L Ed 2d 85 (1984); *Coolidge v New Hampshire,* 403 US 443, 487; 91 S Ct 2022; 29 L Ed 2d 564 (1971); *Burdeau v McDowell,* 256 US 465, 475; 41 S Ct 574; 65 L Ed 1048 (1921).

In the instant case, the language of the ordinance itself clearly establishes that Forsee and Smith were employees or agents of the city in their capacity as weed and grass cutters. Be that as it may, the panoply of the Fourth Amendment's constitutional safeguards is evoked only where the search in question involves government participation:

> The phrase "searches and seizures" connotes that the type of conduct regulated by the fourth amendment must be somehow designed to elicit a benefit for the government in an investigatory or, more broadly, an administrative capacity. Thus, unlike the "state actor" requirement of the fourteenth amendment, the fourth amendment cannot be triggered simply because a person is acting on behalf of the government. Instead, the fourth amendment will only apply to governmental conduct that can reasonably be characterized as a "search" or a "seizure."
>
> * * *
>
> Under the proper factual circumstances, therefore, governmental conduct that is motivated by investigatory or administrative purposes will fall within the scope of the fourth amendment since such conduct constitutes a search or seizure, the type of conduct that is regulated by the amendment. This, in turn, implies that governmental conduct which is not actuated by an investigative or administrative purpose will not be considered a "search" or "seizure" for purposes of the fourth amendment. [*United States v Attson,* 900 F2d 1427, 1429, 1430-1431 (CA 9, 1990).]

To determine whether a given search is the type proscribed by the Fourth Amendment, two initial factors must be shown. First, the police must have instigated, encouraged, or participated in the search. *United States v Coleman,* 628 F2d 961, 965 (CA 6, 1980); *United States v Lambert,* 771 F2d 83,

89 (CA 6, 1985). Second, the individual must have engaged in the search with the intent of assisting the police in their investigative efforts. *United States v Howard,* 752 F2d 220, 227 (CA 6, 1985); *Lambert, supra.* A person will not be deemed a police agent merely because there was some antecedent contact between that person and the police, *Lambert, supra,* and there is no seizure within the meaning of the Fourth Amendment when an object discovered in a private search is voluntarily turned over to the government. *Coolidge, supra,* pp 488-489; *Coleman, supra,* p 966.

Here, Forsee and Smith were assigned by the city to cut defendant's grass. Although, in response to Forsee's inquiry, they were advised to report anything illegal or suspicious found while performing their task, the grass cutters did not enter defendant's property with the intention of conducting a search of the property or, in any way, to aid the city in its investigative efforts. Hence, we conclude that defendant has failed to make the requisite showing of state action for purposes of sustaining a Fourth Amendment challenge.

Finally, we note that the observation made by the detective transgressed no Fourth Amendment protection. Unenhanced visual observations of objects and activities inside a person's home from a location where the observer may properly be does not transgress Fourth Amendment protections. *United States v Taborda,* 635 F2d 131, 139 (CA 2, 1980).

> The very fact that a person is in his own home raises a reasonable inference that he intends to have privacy, and that if that inference is borne out by his actions, society is prepared to respect his privacy. But the inference may be rebutted by the person's own actions. If in his own home he conducts activities or places objects in such a way

that the activities or objects are seen by the unenhanced viewing of persons outside the home, located where they may properly be, such observations transgress no Fourth Amendment protection because "no intention . . . has been exhibited" by the householder to prevent the unenhanced viewing of others. [*Id.,* p 138, quoting *Katz v United States,* 389 US 347, 361; 88 S Ct 507; 19 L Ed 2d 576 (1967) (Harlan J., concurring).]

In sum, upon a thorough review of the record, we are left with a definite and firm conviction that a mistake was made. The record does not evidence any violation of defendant's Fourth Amendment protections. Thus, the district court order granting defendant's motion to suppress was clearly erroneous and must be reversed.

Next, the people argue that the circuit court abused its discretion in denying the delayed application for leave to appeal without considering the merits of the appeal. We conclude that it is unnecessary for us to make a determination on this issue because we have effectively decided this case.

The district court order granting defendant's motion to suppress was entered on October 27, 1988. The people filed an application for leave to appeal in the circuit court on May 15, 1989, nearly seven months later. MCR 7.103(B)(1) provides that "an application for leave to appeal must be filed within 21 days after the entry of the judgment or order appealed from." Because the application for leave to appeal was untimely, it was accompanied by an affidavit explaining the delay, pursuant to MCR 7.103(B)(6). The circuit court conducted a hearing on July 26, 1989, and on August 15, 1989, the court denied the people's application for leave to appeal on the basis that the application was untimely.

The people's supporting affidavit asserted that

the case was not referred to the prosecutor assigned to handle the appeal until November 23, 1988, which was more than twenty-one days after defendant's suppression motion was granted. The prosecutor indicated that, at the time he was assigned to defendant's case, he was informed that a final order had not been entered by the district court and a copy of the dismissal order had not been sent to the prosecutor's office. However, the final order was in fact entered on October 27, 1988. On January 19, 1989, the prosecutor learned the final order had been entered, and he received a transcript of the district court proceedings on January 23, 1989. Nevertheless, even assuming that the time limit began to run in January, the twenty-one-day time limit ended in February 1989. The people did not file an application for leave to appeal until May 15, 1989.

The remedy provided by our court rules for a party aggrieved by a circuit court's decision on an application for leave to appeal is to file an application for leave to appeal with this Court. MCR 7.203 provides, in part:

> (B) Appeal by Leave. The court may grant leave to appeal from:
>
> \* \* \*
>
> (2) a final judgment entered by the circuit court or the recorder's court on appeal from any other court.

Additionally, MCR 7.205(D)(3) provides that where an application for leave to appeal to this Court is granted, "the case proceeds as an appeal of right."

Here, this Court granted leave to appeal on the basis that the merits of the case were worthy of our review. Because we have reviewed the people's substantive issue, the people's related procedural

issue is effectively moot. MCR 7.216(A)(7) provides that this Court is vested with the power to "enter any judgment or order or grant further or different relief as the case may require." In accordance with the principle of judicial economy, it would not be prudent for us to remand this case to the circuit court for a review of the merits of the people's application for leave to appeal. Therefore, the appropriate remedy in this case is to reverse the district court's decision and remand this case to the circuit court for trial.

Reversed and remanded. We do not retain jurisdiction.