# STATE OF MICHIGAN

# COURT OF APPEALS

---

In re Application of DETROIT EDISON COMPANY
To Implement Opt Out Program.

---

CYNTHIA EDWARDS, LINDA KURTZ, and
LESLIE PANZICA-GLAPA,

        Appellants,

v

MICHIGAN PUBLIC SERVICE COMMISSION,

        Appellee,

and

DETROIT EDISON COMPANY,

        Petitioner-Appellee.

UNPUBLISHED
February 19, 2015

No. 316728
MPSC
LC No. 00-017053

---

In re Application of DETROIT EDISON
COMPANY to Implement Opt Out Program.

---

DOMINIC CUSUMANO and LILLIAN
CUSUMANO,

        Appellants,

v

MICHIGAN PUBLIC SERVICE COMMISSION,

        Appellee,

and

No. 316781
MPSC
LC No. 00-017053

DETROIT EDISON COMPANY,

        Petitioner-Appellee.

_____

Before:  MURPHY, P.J., and METER and SERVITTO, JJ.

PER CURIAM.

In these consolidated cases appellants Cynthia Edwards, Linda Kurtz, and Leslie Panzica-Glapa, and Dominic Cusumano and Lillian Cusumano appeal an order of the Michigan Public Service Commission (PSC) approving the application by Detroit Edison Company (DTE) to implement a meter opt-out program.  We affirm in both cases.

## I.  Background

Several years ago, DTE began implementing a "smart grid" system.  The smart grid utilizes improvements to technology to increase the reliability of the electric grid, reduce outage time, and otherwise improve service.  One component of a smart grid is an Advanced Metering Infrastructure (AMI) system.  An AMI system can record near-real-time power consumption data and report that usage to the utility at frequent intervals.  An AMI meter is also known as a smart meter.

The PSC issued an order in Case No. U-15244 approving base rate treatment for costs related to DTE's proposed AMI meter installation pilot program.  Expenditures for the AMI program are reviewed by the PSC on a case-by-case basis.  In addition, the PSC issued an order in Case No. U-17000 directing investor-owned utilities such as DTE to submit the following information:

> AMI deployment plans, costs, and sources of funding; estimates of monetary savings and other benefits expected to be achieved by the deployment of AMI; scientific information concerning the safety of smart meters; an explanation of the type of information that will be gathered through the use of AMI; the steps that the utility intends to take to safeguard the privacy of the customer information; and whether the electric utility intends to allow customers to "opt out" of having a smart meter and if so, how the electric utility intends to recover the cost of the opt-out program.

The PSC directed the Staff to prepare a report summarizing filings from utilities and other interested parties, as well as the literature regarding AMI, and identifying pertinent developments regarding AMI in other jurisdictions.  The PSC directed the Staff to make recommendations regarding the further development of AMI.

The Staff report noted facts regarding DTE's development of an AMI program, including:  (1) DTE intended to install a total of 2.6 million AMI meters in the course of its program; (2) the cost of the program was estimated to be $447 million, with 50% of the costs (up to a predetermined cap) to be reimbursed by a grant from the United States Department of

Energy; (3) DTE estimated savings totaling $65 million per year for gas and electric AMI meters; (4) DTE stated that non-monetary benefits would include a greater ability to identify problems, expedited emergency response, new rate offerings, and increased customer satisfaction; (5) DTE referred to several studies that found that AMI meters did not pose a health risk; (6) DTE planned to use AMI meters to gather only information related to power consumption, and not customers' personal information; (7) DTE planned to safeguard customer information through data encryption and confidentiality policies; (8) DTE planned to offer an opt-out program; and (9) DTE planned to recover the costs of the opt-out program from customers who chose to opt-out from the AMI program.

The Staff reviewed literature on the safety and health concerns related to AMI meters, and concluded that the available evidence showed that the meters did not present a threat to health or safety.

The Staff made the following findings and recommendations regarding opt-out options:

> The Staff concludes that providing an opt-out option is the best solution for customers who have concerns about smart meters. The Staff recommends that utilities investigate a variety of opt-out options. Electromechanical meters may be a viable opt-out option for some customers; however, maintaining electromechanical test facilities, inventory, and manual meter reading could result in higher incremental costs. The traditional electromechanical meter is obsolete and currently not in production. Offering customers an electromechanical meter as an alternative to a smart meter is not a long-term solution.

> Other options are the installation of a smart meter that does not have communicating radio, relocating a smart meter on the customer's premise, or hard-wiring a smart meter into the network. A smart meter without a communicating radio allows the utility to maintain one type of meter. However, manual meter reading would still be required. Customers with a non-communicating meter will not receive some benefits of AMI, and would not, for example, be able to fully participate in new rate structures.

The Staff recommended that ratemaking for an opt-out provision should be based on cost of service principles.

The PSC issued an order in Case No. U-17000 accepting the Staff report as a basis for Commission action. The PSC agreed with the Staff that costs related to smart grid investments should be reviewed in general rate case proceedings, and that electric utilities should be required to provide an opt-out provision based on cost of service principles.

## II. Proceedings in the Instant Case

DTE filed an application seeking approval of its AMI opt-out program. DTE's opt-out program would allow individual residential customers who chose to participate in the program to have a non-transmitting AMI meter installed at their residence instead of a transmitting AMI meter. DTE proposed that customers who participated in the opt-out program be charged $87 for special infrastructure charges and metering changes required at the residence and $15 per month

for the incremental costs of manual meter reading and other services necessitated by maintenance of a manual meter system.

The Administrative Law Judge (ALJ) issued a Proposal for Decision (PFD) and concluded that the PSC's order in Case No. U-17000, which directed DTE to propose an opt-out option based on cost of service principles, established the scope of these proceedings. The ALJ found that scope of these proceeding was limited to establishing rates for customers who chose to opt-out of the AMI meter program based on the costs incurred by DTE for providing non-transmitting meters for those customers, and that other issues need not be discussed.

The ALJ found that various arguments raised by the intervenors were not within the scope of these proceedings. These arguments included: (1) that AMI meters and/or an opt-out program are prohibited under federal law, such as the Americans With Disabilities Act (ADA), 42 USC 12131 *et seq.*, or state law, such as the Michigan Consumer Protection Act, MCL 445.901 *et seq.*; (2) that AMI meters are not mandated by law and so DTE had no authority to install them or collect fees for an opt-out program; (3) that DTE should be required to extend the AMI meter program to its business customers; (4) that health and safety concerns related to AMI meters should be examined; and, (5) that customers who opt-out of the AMI program should be allowed to self-read meters and thereby avoid fees. The ALJ rejected the argument that customers who opt-out of the AMI meter program should be allowed to keep their analog (electromechanical) meters, finding that such an argument was beyond the scope of the proceedings. Finally, the ALJ recommended that the PSC find that DTE's proposed initial fee and monthly fee be set at $67.20 and $9.80, respectively.

The PSC issued an order approving DTE's application to implement an opt-out program. The PSC concluded that the ALJ correctly found the proceeding did not concern the AMI program as a whole or the equipment requirements for the program. Rather, at issue was the appropriateness of DTE's proposed opt-out program. The PSC found that the PFD was "well-reasoned and thorough" and adopted the ALJ's findings and recommendations.

III. Standard of Review

The standard of review for PSC orders is narrow and well defined. Pursuant to MCL 462.25, all rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the PSC are presumed, prima facie, to be lawful and reasonable. *Michigan Consol Gas Co v Public Serv Comm*, 389 Mich 624, 635-636; 209 NW2d 210 (1973). A party aggrieved by an order of the PSC has the burden of proving by clear and convincing evidence that the order is unlawful or unreasonable. MCL 462.26(8). To establish that a PSC order is unlawful, the appellant must show that the PSC failed to follow a mandatory statute or abused its discretion in the exercise of its judgment. *In re MCI Telecom Complaint*, 460 Mich 396, 427; 596 NW2d 164 (1999). An order is unreasonable if it is not supported by the evidence. *Associated Truck Lines, Inc v Public Serv Comm*, 377 Mich 259, 279; 140 NW2d 515 (1966).

A final order of the PSC must be authorized by law and be supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; *Attorney General v Public Serv Comm*, 165 Mich App 230, 235; 418 NW2d 660 (1987). We give due deference to the PSC's administrative expertise, and we will not substitute our judgment for that

of the PSC. *Attorney General v Public Serv Comm No 2*, 237 Mich App 82, 88; 602 NW2d 225 (1999). We give respectful consideration to the PSC's construction of a statute that the PSC is empowered to execute, and we will not overrule that construction absent cogent reasons. If the language of a statute is vague or obscure, the PSC's construction serves as an aid to determining the legislative intent, and will be given weight if it does not conflict with the language of the statute or the purpose of the Legislature. However, the construction given to a statute by the PSC is not binding on us. *In re Complaint of Rovas Against SBC Michigan*, 482 Mich 90, 103-109; 754 NW2d 259 (2008). Whether the PSC exceeded the scope of its authority is a question of law that we review de novo. *In re Complaint of Pelland Against Ameritech Michigan*, 254 Mich App 675, 682; 658 NW2d 849 (2003).

IV. Analysis

A. Docket No. 316728

Appellants Edwards, Kurtz, and Panzica-Glapa argue that the PSC lacked the statutory authority to allow DTE to mandate that those customers who choose to opt-out of the AMI program nevertheless accept the installation of a non-transmitting AMI meter, and that the lack of a mandate for the installation of AMI meters requires DTE to provide a non-AMI meter option for those customers who do not want an AMI meter. We disagree.

The PSC has only the authority granted to it by statute. The PSC has broad authority to regulate rates for public utilities, but that authority does not include the power to make management decisions for utilities. *Consumers Power Co v Public Serv Comm*, 460 Mich 148, 157-158; 596 NW2d 126 (1999) (PSC lacked authority to order utilities to transport electricity produced and sold by other utilities to customers); *Union Carbide Corp v Public Serv Comm*, 431 Mich 135, 148-150; 428 NW2d 322 (1988) (PSC lacked authority to forbid the operation of a facility).

Appellants correctly point out that the PSC has no statutory authority to enable DTE to require all customers to accept an AMI meter, even if some customers choose to opt-out of the AMI program. However, no such statute exists because the decision regarding what type of equipment to deploy can only be described as a management prerogative. DTE applied for approval of its AMI program, but that fact does not mandate a conclusion that DTE's decision regarding what meters to use is not a management decision. Appellants' suggestion that the PSC could order DTE to allow customers who wish to do so to retain analog meters is clearly the type of action found invalid in *Union Carbide*. Appellants clearly do not wish to accept AMI meters, but they have cited no authority that supports their argument that the PSC erred in approving DTE's AMI program with its requirement that all customers accept AMI meters, even if those meters are rendered incapable of transmitting. The PSC's order is not unlawful in this regard.

Next, appellants Edwards, Kurtz, and Panzica-Glapa argue that the PSC was required to find that the opt-out fee was just and reasonable before it could approve the opt-out program, and that a cost/benefit analysis was required before the PSC could find that installation of a non-transmitting meter would address the concerns of those customers who did not want an AMI meter of any type installed on their residences. We disagree.

Appellants' argument that the PSC's order was not supported by the evidence because no evidence showed that customers who wished to opt-out of the AMI program would benefit from receiving a non-transmitting AMI meter is simply another way of asserting that issues regarding health concerns, etc., surrounding AMI meters should have been addressed in this case. However, the PSC addressed those concerns in Case No. U-17000 when it adopted the Staff report that found that the concerns were minimal and should not be an impediment to implementation of the AMI program. Appellants' arguments are an attempt to collaterally attack the PSC's decision in Case No. U-17000. Such an attack is precluded. See *Kosch v Kosch*, 233 Mich App 346, 353; 592 NW2d 434 (1999). The PSC's order in Case No. U-17000 found that the AMI program benefitted customers; therefore, no cost/benefit analysis was needed in this proceeding. The PSC's order is not unlawful or unreasonable.

Finally, appellants Edwards, Kurtz, and Panzica-Glapa argue that the PSC violated the ADA and the Persons With Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*, by failing to require DTE to comply with the statutes by offering customers who wish to retain an analog meter the opportunity to do so.[1]

Appellants have indicated that they no longer wish to pursue this issue in this forum; therefore, we decline to give it further consideration.

B. Docket No. 316781

Appellants Cusumano argue that the PSC erred in limiting the scope of this proceeding to the establishment of the opt-out program and the fees to be charged in the program. Appellants also note that the PSC's order in Case No. U-17000 did not limit proceedings in the instant case to residential customers.[2] Moreover, some customers could be exempt from extra charges under applicable state or federal law, such as the ADA. According to appellants, the PSC should have addressed these issues in this proceeding. We disagree.

Appellants' position is that the scope of this proceeding should not have been limited to the approval of DTE's opt-out program and the rates to be charged in that program, but rather should have addressed concerns of health, privacy, etc., raised by customers who did not wish to receive an AMI meter of any kind. However, no language in any prior order in any PSC case supports appellants' position.

---

[1] Appellants have moved to file an amended brief; in the proposed amended brief that accompanies the motion, appellants state that they have elected to withdraw this claim so that they might pursue it in another forum.

[2] Appellants suggest that because the instant case was filed before the order in Case No. U-17000 was issued, that order is not controlling in the instant case. Appellants cite no authority to support their assertion. Appellants cannot simply announce their position and then leave it to this Court to search for authority to reject or sustain their position. *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998).

The Staff report submitted in Case No. U-17000 addressed issues such as health concerns, and found that the available evidence supported a conclusion that AMI meters were safe. The PSC accepted the Staff report, and thus accepted the conclusions reached therein. In this case the ALJ used the PSC's order in Case No. U-17000 as a guide and made evidentiary rulings that excluded evidence that was irrelevant to the establishment of the opt-out program and the fees to be charged therein. Those rulings were set out in the PFD. No party sought leave to appeal[3] to the PSC to challenge those rulings prior to the issuance of the PSC's decision in this case. Nothing in the record supports appellants' assertion that the scope of this proceeding should have been expanded beyond the implementation of the opt-out proceeding. Appellants cannot collaterally attack the PSC's order in Case No. U-17000 in the context of the instant case. *Kosch*, 233 Mich App at 353.

Appellants note that the PSC's order in Case No. U-17000 did not limit proceedings in the instant case to consideration of DTE's opt-out program for residential customers. However, the PSC stated that it was aware of no evidence that any of DTE's commercial or industrial customers sought an opt-out option. To the extent that appellants are arguing that the PSC should have ordered DTE to offer an opt-out program to its commercial and industrial customers, appellants are incorrect. The decision by DTE to limit this opt-out program to residential customers is a management decision with which the PSC cannot interfere. *Union Carbide Corp*, 431 Mich at 148-150. The PSC's order limiting the scope of this proceeding is not unlawful.

Next, appellants Cusumano argue that the PSC erred in concluding that it could not encroach on DTE's management prerogatives because the PSC's authority to investigate and enter appropriate orders was not constrained by that doctrine under the circumstances of this case. We disagree.

The PSC has broad authority to regulate rates for public utilities. MCL 460.6a(1). This authority does not include the power to make management decisions for a public utility. *Consumers Power Co*, 460 Mich at 157-158; *Union Carbide Corp*, 431 Mich at 148-150.

MCL 460.58 provides in pertinent part:

Upon complaint in writing that any rate, classification, regulation or practice charged, made or observed by any public utility is unjust, inaccurate, or improper, to the prejudice of the complainant, the commission shall proceed to investigate the matter.

In the past several years municipal officials and individuals have begun expressing concern about AMI meters. In response, the PSC initiated Case No. U-17000 and directed regulated electric utilities to submit information regarding the utility's plans to deploy AMI meters, etc. Case No. U-17000 was not initiated pursuant to a "complaint in writing" as alleged by appellants. The resolutions expressing concern about AMI meters passed by various municipalities were not filed with the PSC and thus did not constitute the type of "complaint in

---

[3] See 1999 AC, R 460.17337.

-7-

writing" referred to in MCL 460.58. Similarly, the comments submitted by individuals when Case No. U-17000 was opened for comments did not constitute complaints.

Appellants incorrectly assert that the management prerogatives doctrine did not apply in this case because the instant case was initiated by complaint. The instant case was initiated by DTE's filing of an application for approval of its opt-out program pursuant to the PSC's order in Case No. U-17000. Therefore, the PSC could not order DTE to offer customers an analog meter in place of a non-transmitting AMI meter. The PSC correctly acknowledged as much. The PSC's order is not unlawful.

Next, appellants Cusumano argue that the PSC erred in finding that certain issues were beyond the scope of this proceeding, because those issues were not adjudicated in any prior PSC case. We disagree.

Ratemaking is a legislative rather than a judicial function. For that reason, the doctrines of res judicata and collateral estoppel do not apply in a strict sense. Nevertheless, "issues fully decided in earlier PSC proceedings need not be 'completely relitigated' in later proceedings unless the party wishing to do so establishes by new evidence or a showing of changed circumstances that the earlier result is unreasonable." *In re Application of Consumers Energy Co for Rate Increase*, 291 Mich App 106, 122; 804 NW2d 574 (2010), quoting *Pennwalt Corp v Public Serv Comm*, 166 Mich App 1, 9; 420 NW2d 156 (1988).

The PSC adopted the Staff report in Case No. U-17000; that report examined literature that addressed health concerns surrounding AMI meters and concluded that any such concerns were insignificant. In the instant case appellants sought to introduce testimony regarding their own concerns with AMI meters. However, that testimony was excluded because the ALJ determined that it was beyond the scope of this proceeding. The PSC affirmed that finding. Appellants have not shown that new evidence or any changed circumstances render that decision unreasonable. *In re Application of Consumers Energy Company*, 291 Mich App at 122. The PSC's order is thus not unlawful or unreasonable.

Finally, appellants Cusumano argue that an AMI meter, either transmitting or non-transmitting, is in fact a surveillance device that measures not only total consumption of electricity but also when that electricity is used, and what types of electrical devices are being used at any given time. Appellants assert that it is virtually certain that law enforcement agencies will access this data, and that such access would constitute an unreasonable warrantless search under the Fourth Amendment to the United States Constitution. We disagree.

We review for plain error an unpreserved constitutional issue. *In re Application of Int'l Transmission Co*, 304 Mich App 561, 567; 847 NW2d 684 (2014).

The Fourth Amendment to the United States Constitution reads:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Fourth Amendment applies only to government actions, and is not applicable to a search performed by a private actor not acting as an agent of the government. See *People v McKendrick*, 188 Mich App 128, 141; 468 NW2d 903 (1991). Appellants have not established that the installation of either a transmitting or a non-transmitting AMI meter constitutes a search, or that even if it did, that DTE acts as an agent of the government.

## V. Conclusion

Neither appellant has raised an issue that warrants relief. The PSC's order is not unlawful or unreasonable.

Affirmed.

/s/ William B. Murphy
/s/ Patrick M. Meter
/s/ Deborah A. Servitto