# STATE OF MICHIGAN

# COURT OF APPEALS

JOSHUA STEWART ELDENBRADY and
ANNA LORENA ELDENBRADY,

UNPUBLISHED
February 23, 2017

Plaintiff-Appellants,

v

No. 330196
Muskegon Circuit Court
LC No. 15-050131-CZ

CITY OF MUSKEGON,

Defendant-Appellee.

Before: BORRELLO, P.J., and MARKEY and M. J. KELLY, JJ.

PER CURIAM.

Plaintiffs appeal by right from the trial court's order granting summary disposition to defendant and dismissing the case. We affirm.

This case arises from plaintiffs' violation of the city of Muskegon's noxious vegetation ordinance. Defendant contacted plaintiffs on July 22, 2015, to notify plaintiffs that their property contained noxious vegetation and weeds in violation of the ordinance. Defendant informed plaintiffs that if plaintiffs did not mow the area in question, defendant would do so at cost to plaintiffs as provided in the city ordinance. Plaintiffs and defendant engaged in a series of letters, phone calls, and e-mails discussing plaintiffs' property and the plants in question. During this process, defendant clarified the area at issue for plaintiffs and amended the future inspection date so as to give plaintiffs time to comply. Plaintiffs inquired as to how plaintiffs could appeal the inspector's decision that they were in violation of the ordinance. Defendant responded by offering to extend the deadline for the next inspection date and further clarifying the area in violation of the ordinance. After receiving this response, plaintiffs filed suit against defendant. Plaintiffs alleged that defendant threatened destruction of plaintiffs' property without any opportunity for hearing in violation of plaintiffs' procedural due process rights. Plaintiffs sought a declaratory judgment holding that the city of Muskegon's abatement proceedings violated due process and also sought an injunction prohibiting the city from entering plaintiffs' land. Sometime after filing the complaint, plaintiffs mowed the property themselves and brought the property into compliance with the ordinance.

Defendant moved the trial court for summary disposition. The trial court granted defendant's motion, holding that defendant had provided sufficient procedures necessary to satisfy plaintiffs' due process rights. The trial court found that the plants represented a small

-1-

economic investment via plaintiffs' buying the seeds and caring for the plants. It held that defendant's procedures, specifically the extensive communication between defendant and plaintiffs regarding the ordinance, were adequate to satisfy plaintiffs' minor interest in the plants.

Plaintiffs argue that the trial court improperly granted defendants' motion for summary disposition because due process required defendant to grant plaintiffs a hearing with a neutral arbiter. We disagree.

"Whether due process has been afforded is a constitutional issue that is reviewed de novo." *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013). This Court also reviews de novo motions for summary disposition. *Id.* Under MCR 2.116(C)(10), this Court reviews the record in the same manner as the lower court and "must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the party opposing the motion, and grant the benefit of any reasonable doubt to the opposing party." *Radtke v Everett*, 442 Mich 368, 374; 501 NW2d 155 (1993).

MCR 2.116(C)(10) provides that a trial court may grant judgment on all or part of a claim where, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." The moving party must specifically identify the alleged undisputed factual issues and support his or her position with documentary evidence. MCR 2.116(G)(3)(b) and (4). The nonmoving party then has the burden to produce admissible evidence to establish material disputed facts. *Wheeler v Shelby Charter Twp*, 265 Mich App 657, 663; 697 NW2d 180 (2005). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). But in deciding the motion, a trial court may not assess credibility or determine disputed facts. *Oade v Jackson Nat'l Life Ins Co*, 465 Mich 244, 265; 632 NW2d 126 (2001).

According to the Muskegon City Code, all noxious weeds and vegetation within the city are a public nuisance. Muskegon Ordinances, § 98-33. The Muskegon City Code defines noxious weeds and vegetation as follows:

> *Noxious weeds* includes Canada thistle (Cirsium arvense), dodders (any species of Cuscuta), mustards (charlock, black mustard, and Indian mustard, species of Brassica or Sinapis), wild carrot (Daucus carota), bindweed (Convolvulus arvensis), perennial sowthistle (Sonchus arvensis), hoary alyssum (Berteroa incana), giant hogweed (Heracleum mantegazzianum), ragweed (Ambrosia elatior 1.), and poison ivy (Rhus toxicodendron), poison sumac (Toxicodenron vernix), or other plant which, in the opinion of the city commission, comes under the provisions of this article is regarded as a common nuisance. Regular sumac must be trimmed and maintained.

> *Noxious weeds and vegetation* includes grass more than six inches in height, dead bushes, dead trees and stumps and bushes and trees infested with dangerous insects or infectious diseases, un-bagged leaves on a property with a principal structure, after the leaf season has concluded. Leaf season shall be

defined as beginning September 1 and ending April 30.  Designated natural areas, native dune vegetation and bona fide maintained wildflower plantings and leaf composting in a container or contained area of less than 16 square feet in size may not be considered noxious.  [Muskegon Ordinances, § 98-31.]

A property owner who fails to destroy or cut down noxious weeds and vegetation, as described above, commits a civil infraction.  Muskegon Ordinances, § 98-38.  After proper notice is given, the city may enter the land, remove the noxious weeds and vegetation, and hold the property owner responsible for all expenses associated with removal.  Muskegon Ordinances, § 98-35. The Muskegon City Code describes proper notice as follows:

(a)  The city shall publish in a newspaper of general circulation in the city during the month of March that noxious weeds and vegetation not cut or removed during the growing season, namely April 15 through October 15 of the given year, may be cut or removed by the city and the owner of the property charged with the cost thereof.  The publication shall contain the following information:

(1)  That noxious weeds, grass more than six inches in height, dead bushes, dead trees and stumps and bushes and trees infested with dangerous insects or infectious diseases must be cut and removed from property during the growing season, namely April 15 through October 15 of the given year.  Un-bagged leaves on a property with a principal structure, after leaf season has concluded, must be removed.

(2)  That if the owner, agent or occupant refuses to destroy the noxious weeds, the city or its contractor may enter upon the land and destroy them and remove them.

(3)  That any expense incurred in the destruction shall be paid by the owner of the land and the city shall have a lien against the land for the expense, to be enforced as provided by this article or in the manner of enforcement of tax liens.

(4)  That any owner who refuses to destroy such material and remove it may be subject to a municipal civil infraction.

(5)  That the city or its contractor may cut or remove the weeds as many times as is necessary and charge the cost to the property owner.  Uncovered costs may be placed as a lien on the property and/or subject to collection proceedings.

(b)  Such notice shall state that, for failing to comply with the notice, the city, through its commissioner of noxious weeds and vegetation, shall have the right to enter upon such lands and destroy and remove such noxious weeds or vegetation and the city shall have a lien upon such lands for the expense and cost so incurred, which shall be levied and collected against the property in the same manner as general taxes.

(c)  Additional notice shall be provided as outlined and adopted by the city commission policy.  [Muskegon Ordinances, § 98-35.]

Those found to be in violation of the ordinance have the right to appeal to the circuit court.  See MCL 117.30; *People v McKendrick*, 188 Mich App 128, 140; 468 NW2d 903 (1991).

The ordinance is subject to the constitutional requirements of procedural due process. *McKendrick*, 188 Mich App at 138-139.  "[T]he Due Process Clause of the Fourteenth Amendment prohibits the States . . . from depriving any person of property without 'due process of law.' " *Dusenbery v United States*, 534 US 161, 167; 122 S Ct 694; 151 L Ed 2d 597 (2002).  "A procedural due process analysis requires a dual inquiry: (1) whether a liberty or property interest exists which the state has interfered with, and (2) whether the procedures attendant upon the deprivation were constitutionally sufficient." *Jordan v Jarvis*, 200 Mich App 445, 448; 505 NW2d 279 (1993).  Due process of law requires the state to provide notice and an opportunity to be heard to persons whose property interests are at stake.  *Dusenbery*, 534 US at 167.  The purpose of providing an opportunity to be heard is "to minimize substantively unfair or mistaken deprivations of property."  *Fuentes v Shevin*, 407 US 67, 81; 92 S Ct 1983; 32 L Ed 2d 556 (1972).  The opportunity to be heard must be "at a meaningful time and in a meaningful manner," *id*. at 80, but does not necessarily need to be held before deprivation.  *Van Slooten v Larsen*, 410 Mich 21, 53; 299 NW2d 704 (1980).

When determining whether a state procedure provides constitutionally adequate notice and opportunity to be heard, a court must balance the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  [*Mathews v Eldridge*, 424 US 319, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976); see also *Parham v JR*, 442 US 584, 599; 99 S Ct 2493; 61 L Ed 2d 101 (1979) (stating that the *Eldridge* balancing test is used to determine whether a state procedure meets due process requirements).]

This balancing test reflects that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v Brewer*, 408 US 471, 481; 92 S Ct 2593; 33 L Ed 2d 484 (1972).  This flexibility means that a constitutionally sufficient opportunity to be heard will vary in the level of process afforded to an individual based on the factors listed in *Eldridge*.  See *Parham*, 442 US at 608 n 16.  Accordingly, "special or summary proceedings for abatement of nuisances are valid where they afford the essential elements of due process of law, namely, notice and an opportunity to be heard." *McKendrick*, 188 Mich App at 139.

In the present case, because plaintiffs have a vested interest in the use and possession of their property, *Bonner v City of Brighton*, 495 Mich 209, 226; 848 NW2d 380 (2014), plaintiffs have demonstrated that "a liberty or property interest exists which the state has interfered with," *Jordan*, 200 Mich App at 448.  The remaining issue is whether the procedures that denied plaintiffs of their property were constitutionally sufficient.  *Jordan*, 200 Mich App at 448.  To

determine whether the notice and opportunity to be heard were constitutionally sufficient, this Court must evaluate the plaintiffs' interest in the property, the risk of erroneous deprivation, and the government's interest. *Eldridge*, 424 US at 335.

Plaintiffs' interest in the property is minimal. See *Eldridge*, 424 US at 335. Plaintiffs have an interest in their use and dominion of their property. As plaintiffs conceded, the plants have minimal economic value. Even if defendant had taken abatement action, the cost to plaintiffs to abate would also be minimal. See *Shoemaker v City of Howell*, 795 F3d 553, 561 (CA 6, 2015) (finding that abatement costs from a mowing ordinance represented only a minor property interest). Further, although plaintiffs also have an interest in the way that they use their property, there is minute cognizable interest in using property to maintain noxious plants. See *Bonner*, 495 Mich at 228-229.

As for the second *Eldridge* factor, we conclude there is also a low risk of erroneous deprivation through the procedures used here. Defendant's noxious vegetation ordinance is similar to the mowing ordinances of Ferndale and Howell, both of which were held to be so specific that the risk of the city's erroneously mowing compliant plants was very low. See *McKendrick*, 188 Mich at 140; *Shoemaker*, 795 F3d at 561; see also Muskegon Ordinances § 98-31 (providing detailed definitions of the plants covered by the ordinance). Further, plaintiffs exchanged several letters and e-mails with defendant regarding the plants and what specific plants rendered the area at issue non-compliant with the ordinance. In these letters and e-mails, defendant continuously offered to push back the date of reinspection so that plaintiffs would have time to comply. Plaintiffs also had the ability to appeal the violation through MCL 117.30. See *McKendrick*, 188 Mich App at 140. The communications between defendant and plaintiffs, as well as the ability to appeal a decision by defendant regarding compliance with the ordinance to the circuit court, further decrease the likelihood that plaintiffs, or any other property owner in Muskegon, could be wrongfully deprived of their property. Considering the safeguards already in place, the probable value of additional safeguards is also low. See *Shoemaker*, 795 F3d at 561-563.

Finally, defendant's interest in the ordinance is significant. See *Eldridge*, 424 US at 335. The stated purpose of the ordinance is to prevent the growth of noxious vegetation on private land because of its detrimental effect on "the health, comfort, convenience, safety, welfare, and prosperity of the residents of the city." Muskegon Ordinances, § 98-32; see also *McKendrick*, 188 Mich App at 138 (discussing the state's interest in regulating for the public welfare). Defendant also has a significant interest against additional procedures because such additional procedures would cause an increase in costs. See *Eldridge*, 424 US at 348 ("[T]he Government's interest, and hence that of the public, in conserving scarce fiscal and administrative resources is a factor that must be weighed.").

In sum, adequate due process was afforded to plaintiffs by defendant's annual public notice of the ordinance, individual notification of plaintiffs' violation of the ordinance, significant communication between city officials and plaintiffs, and plaintiffs' ability to appeal any determination made by city officials to the circuit court. Under *Eldridge*, these procedures are sufficient to meet the requirements of due process, as plaintiffs' interest in the property is minimal, there is a low risk of erroneous deprivation under the established procedures, and defendant's interest is significant. See *Eldridge*, 424 US at 335.

Plaintiffs also attempt to argue that the trial court erred because it failed to consider plaintiffs' aesthetic and religious interest in the plants at issue in addition to the economic value of the plants. Plaintiffs, however, failed to provide relevant authority to support this principle. Further, although plaintiffs generally stated that plants can have aesthetic or religious value, plaintiffs failed to state what religious or aesthetic value the plants at issue had to plaintiffs, making it impossible to assess the value of these considerations. Considering plaintiffs' failure to provide citation to any relevant law beyond *Eldridge* and their failure to apply their legal argument to the facts at hand, we find this issue is abandoned. See *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003) ("An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue.").

We affirm.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Michael J. Kelly

-6-