# STATE OF MICHIGAN

# COURT OF APPEALS

THE DETROIT EDISON COMPANY,

Plaintiff-Appellee,

v

RALPH STENMAN and DONNA STENMAN,

Defendants-Appellants.

FOR PUBLICATION
July 14, 2015
9:05 a.m.

No. 321203
Oakland Circuit Court
LC No. 2012-128816-CZ

Before: METER, P.J., and CAVANAGH and WILDER, JJ.

PER CURIAM.

Defendants, Ralph and Donna Stenman, appeal as of right a trial court order that, pursuant to a stipulation between the parties, dismissed plaintiff's, the Detroit Edison Company's ("DTE"), remaining claims with prejudice following an order that granted partial summary disposition in favor of plaintiff. We affirm.

I

In September 2011, plaintiff installed an Advanced Metering Infrastructure ("AMI") meter, commonly known as a "smart meter," on defendants' property. In March 2012, defendants mailed a letter to plaintiff indicating that they revoked and denied their consent to the installation of a "smart meter," or any other meter that emits electromagnetic radiation, conducts surveillance, or records events and activities on their property, asserting a series of claims related to the health-related consequences of smart meters and the legality of plaintiff's installation of such a meter on their property. Additionally, among numerous other claims and demands, defendants asked plaintiff to immediately remove the smart meter from their property, threatened to remove and replace the meter themselves if plaintiff failed to remove it within 21 days after receiving the letter, and asserted that plaintiffs' personnel may only enter or perform activities on their property if they schedule an appointment at a time convenient for defendants. Defendants ultimately removed the smart meter and mailed it back to plaintiff in May 2012, installing an analog meter in its place.

On August 17, 2012, plaintiff filed a three-count complaint against defendants.[1] Plaintiff alleged that defendants tampered with the smart meter and replaced it with an unauthorized and untested meter, which potentially created safety risks for individuals on defendants' property. Additionally, plaintiff alleged that defendants' conduct constituted a felony in violation of MCL 750.383a and violated the terms of the tariff[2] filed by plaintiff and approved by the Michigan Public Service Commission ("MPSC") pursuant to MCL 460.6(1), which defendants were required to follow as a condition of receiving electricity from plaintiff. Plaintiff asked the trial court to enter a declaratory judgment ordering that (1) plaintiff had the right to access defendants' property, and install and maintain its equipment on defendants' property, as authorized by the tariff, (2) defendants were responsible for protecting plaintiff's equipment on their property and preventing any individuals, including themselves, from tampering with or removing the equipment, and (3) plaintiff's tariff and the rules promulgated by the MPSC control the rights and obligations of the parties, not the letter that defendants sent to plaintiff in March 2012.

On September 24, 2012, defendants filed an amended answer and counterclaim to plaintiff's complaint. Defendants asserted, inter alia, that a factual dispute exists regarding whether a smart meter is actually a "meter" under the relevant tariff and regulations, that plaintiff failed to demonstrate that the tariff authorized the installation of "smart meters" with radio transmitters, and that smart meters constitute surveillance devices in violation of federal law. Defendants also raised numerous affirmative defenses, including that smart meters will allow plaintiff to collect and sell private data in violation of the Fourth Amendment, that the smart meter will constantly cover their home with electromagnetic radiation and endanger defendants' health, and that defendants acted in self-defense by removing and replacing the smart meter in light of the ways in which the smart meter threatened their health and safety.

On October 4, 2012, plaintiff filed a motion for partial summary disposition pursuant to MCR 2.116(C)(10), asserting that there was no genuine issue of material fact with regard to the claims raised in Count I of its complaint. With its motion, plaintiff proffered an MPSC order which discussed a staff report that considered concerns similar to those raised by defendants in this case and concluded that the health risks associated with smart meters including radio transmitters were insignificant. Additionally, in its October 9, 2012 reply to defendants' affirmative defenses, plaintiff asserted that the defenses raised by defendants were either untrue or improper under MCR 2.111(F)(3).

In their November 7, 2012 response to plaintiff's motion for partial summary disposition, defendants asserted, among other things, that there was a genuine issue of material fact regarding

---

[1] Because plaintiff only requested partial summary disposition as to Count I, we will not discuss the procedural history and arguments raised by the parties concerning the other allegations in the complaint. Additionally, we will not discuss the procedural history related to defendants' counterclaim.

[2] The "tariff" is the "Rate Book for Electric Service" that applies to customers' receipt of electrical power from plaintiff.

(1) whether plaintiff was authorized by the MPSC to install a smart meter on defendants' property, as plaintiff failed to show that a smart meter qualifies under the definition of "meter" under the tariff or any other rule promulgated by the MPSC, and (2) whether the smart meter presents a danger to defendants' health and privacy rights under the Fourth Amendment. Defendants also argued that they are entitled to an "opportunity to prove, through an evidentiary process, that their concerns about the health and safety of the [smart meter] . . . are valid," asserting that they had provided "preliminary evidence" indicating "that it is at least plausible that they might meet their burden with respect to the danger posed by [the smart meter]" through the affidavit of Dr. Donald Hillman, which described the alleged effects of a smart meter on the health of a child not involved in the instant case.

On November 16, 2012, plaintiff filed a reply to defendants' response, in which they asserted that both a smart meter and a digital meter qualify under the definition of "meter" under the MPSC rules and regulations and that the MPSC has authorized the use of smart meters.

After holding a hearing on plaintiff's motion, the trial court granted plaintiff's motion for partial summary disposition on November 29, 2012. The opinion provided, in relevant part:

> Defendants fail to present any evidence creating a question of fact regarding either health or privacy issues sufficient to preclude enforcement of the law governing Plaintiff's use of the smart meter and Defendants responsibilities under the tariff and administrative rules. Defendants' reliance on Dr. Hillman's Affidavit is not responsive to Plaintiff's argument and refers to individuals that are not parties to this case. The Court observes that the Michigan Public Service Commission issued an Order that addressed the concerns similar to Defendants['], specifically adverse health effects, customer privacy concerns, data protection and cyber security issues as well as costs raised by individuals and local governments regarding implementing the AMI by electric utilities operating in Michigan. The Commission accepted a Staff report that health risks from the installation and operation of metering systems using radio transmitters [are] insignificant and that the appropriate federal health and safety regulations provide assurance that smart meters represent a safe technology. Additionally, the Commission held that investor-owned utilities, such as Detroit Edison, must make available an opt-out option, based on cost-of-service principles for their customers. . . .
>
> For these reasons and those further stated by Plaintiff, the Court grants Plaintiff's motion for partial summary disposition and orders that Plaintiff shall be entitled to have access to Defendants' property[] to install, inspect, read, repair and/or maintain its company-owned equipment on their premises. Furthermore, the Court orders that Defendants shall be responsible for the safe-keeping of Plaintiff's property on Defendants' premises. Finally, the Court finds that the MPSC rules govern the rights and responsibilities of the parties.

On December 12, 2012, defendants moved for a 60-day partial stay of the order of partial summary disposition entered in favor of defendant, citing MCR 2.614(B) as the basis of their motion. In particular, defendants asserted that a stay was necessary because defendant Donna Stenman had experienced headaches, nausea, and sleep difficulties when the smart meter was

installed, and, as a result, defendants needed time to sell their home and move to another location.[3]  In its December 17, 2012 response to defendants' motion, plaintiff asserted that defendants were not entitled to a stay because MCR 2.614(B) only permits a stay when a motion for relief from an order or judgment is pending, and no such motion was pending.  The court held a hearing on defendants' motion and entered an order granting defendants' motion for a stay on January 11, 2013, "for the purpose of obtaining the [MPSC] ruling on [plaintiff's] proposed opt-out provision."

On June 17, 2013, plaintiff filed a motion to vacate the trial court's order granting a partial stay of the proceedings because the purpose of the partial stay was achieved when the MPSC entered an order on May 15, 2013, stating that customers may participate in the opt-out program set forth "under the Non-Transmitting Meter Provision of MPSC Tariff No. 10."  In their response to plaintiff's motion, defendants raised a series of challenges to the validity of the MPSC order and argued that the trial court should not vacate the stay because the reasons for which the stay was granted had not been achieved and because defendants had filed an interlocutory appeal of the trial court's order granting partial summary disposition.[4]  Moreover, defendants argued that the trial court should continue the stay because lifting the stay would place defendants in immediate danger given their health conditions, whereas plaintiff would experience no harm, as demonstrated by the fact that plaintiff had replaced smart meters with analog meters at two of their neighbors' homes.  In their reply to defendants' response, plaintiff refuted the arguments and evidence presented by defendants.  After holding a hearing, the trial court granted plaintiff's motion to vacate the partial stay, noting in its opinion that the express purpose of the stay had been to obtain the MPSC ruling concerning plaintiff's proposed opt-out provision.

On September 4, 2013, defendants filed a motion for reconsideration of the trial court's order granting plaintiff's motion to vacate the partial stay of the proceedings.  Defendants asserted that the trial court had refused to recognize that it was required to stay the proceedings under MCR 7.205(E)(3)[5] in light of defendants' interlocutory appeal, and reiterated a series of claims and arguments related to the danger of smart meters, the consequences of lifting the stay, and the evidence supporting their claims.  On October 18, 2013, the trial court entered an order denying defendants' motion for reconsideration, concluding that defendants failed to demonstrate that there was a palpable error by which the court and parties were misled and noting that this Court had denied defendants' application for leave to appeal.

---

[3] Also on December 12, 2012, defendants filed a motion for reconsideration of the order granting partial summary disposition, which the trial court neither granted nor denied.

[4] This Court denied defendants' application for leave to appeal on September 10, 2013. *Detroit Edison Co v Stenman*, unpublished order of the Court of Appeals, entered September 10, 2013 (Docket No. 316431).

[5] We note that defendants cited the wrong court rule in support of their argument.  We presume that they intended to cite MCR 7.205(F)(3).

On March 17, 2014, pursuant to a stipulation between the parties, the trial court entered a final judgment that dismissed with prejudice plaintiff's claims that were not resolved by the November 29, 2012 order.

II

First, defendants argue that the trial court erred in granting partial summary disposition in favor of plaintiff under MCR 2.116(C)(10) because defendants established a genuine issue of material fact with regard to (1) whether plaintiff's installation of the smart meter was lawful under the definition of "meter" in the applicable administrative rules and tariff, and (2) whether defendants' privacy and health concerns justified or excused their conduct. We disagree.

This Court reviews de novo a trial court's grant or denial of summary disposition. *Moraccini v Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012). When reviewing a motion for summary disposition pursuant to MCR 2.116(C)(10), this Court may only consider, in the light most favorable to the party opposing the motion, the evidence that was before the trial court, which consists of "the 'affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties.' " *Calhoun Co v Blue Cross Blue Shield Michigan*, 297 Mich App 1, 11-12; 824 NW2d 202 (2012), quoting MCR 2.116(G)(5). Under MCR 2.116(C)(10), "[s]ummary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). Additionally, "[w]here the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in [the] pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475; 776 NW2d 398 (2009) (quotation marks and citation omitted; alteration in original).

A

First, there was no genuine issue of material fact regarding whether the smart meter installed by plaintiff was lawful under the definition of "meter" applicable to the relevant administrative rules and tariff. Plaintiff is a public utility that is regulated by the MPSC. *Durcon Co v Detroit Edison Co*, 250 Mich App 553, 554; 655 NW2d 304 (2002). With regard to the regulation of public utilities, MCL 460.6(1) provides:

(1) The [MPSC] is vested with complete power and jurisdiction to regulate all public utilities in the state except a municipally owned utility, the owner of a renewable resource power production facility as provided in section 6d, and except as otherwise restricted by law. *The [MPSC] is vested with the power and jurisdiction to regulate all rates, fares, fees, charges, services, rules, conditions of service, and all other matters pertaining to the formation, operation, or direction of public utilities.* The [MPSC] is further granted the power and jurisdiction to hear and pass upon all matters pertaining to, necessary, or incident to the

-5-

regulation of public utilities, including electric light and power companies, whether private, corporate, or cooperative . . . . [Emphasis added.]

Likewise, Mich Admin Code, R 460.3101(4) provides, "Each utility may adopt reasonable rules and regulations governing its relations with customers which it finds necessary and which are not inconsistent with these rules for electric service. Adopted rules and regulations shall be filed with, and approved by, the [MPSC]." Accordingly, if the installation of a smart meter is permitted under the regulations promulgated by the MPSC, and the utility rules and tariff approved by the MPSC, the installation of the smart meter was lawful.

On appeal, defendants argue that plaintiff failed to identify the "legal definition" of "meter" under the relevant statutes, regulations, or tariff and failed to assert that the smart meter installed on their residence qualifies under any of these definitions. Contrary to defendants' claims, plaintiff identified the definition of "meter" under Mich Admin Code, R 460.3102, which provides the definitions of terms used in the MPSC regulations related to the provision of electric service: " 'Meter,' unless otherwise qualified, means a device that measures and registers the integral of an electrical quantity with respect to time." R 460.3102(g). Although the tariff that applied to defendants' receipt of electric service through plaintiff, MPSC No. 10 – Electric, did not include its own definition of "meter," we conclude that the definition of "meter" provided in R 460.3102(g) was applicable to the tariff, as the tariff specifically referenced R 460.3102 under its Administrative Rules Index.

Moreover, there was no genuine issue of material fact with regard to whether a smart meter qualifies as a "meter" under R 460.3102(g), or whether plaintiff's installation of a smart meter was lawful. In the trial court and on appeal, defendants assert that a "meter" installed by a regulated public utility may only perform the functions that it is authorized by law to perform, arguing that the smart meter installed by plaintiff violated the "lawful definition of 'meter' " because it was capable of performing functions other than measuring electricity use. However, based on the plain language of the definition of "meter" under R 460.3102(g), there is no indication that electricity-measuring devices that have radio transmitters or other additional capabilities do not constitute "meters." See *Danse Corp v City of Madison Hts,* 466 Mich 175, 184; 644 NW2d 721 (2002) (stating that the same rules of statutory construction apply to statutes and regulations and that an appellate court is governed by the plain language of the regulation). The mere fact that the definition does not expressly state that a meter with a radio transmitter still constitutes a meter does not indicate that a meter with such a feature is not included under the definition. Additionally, apart from their argument, defendants failed to provide in the trial court any evidence or authority indicating that smart meters do not qualify under the legal definition of "meter." See MCR 2.116(G)(4) ("When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial.").[6] Accordingly, we conclude that reasonable

---

[6] We also find defendants' argument unconvincing in light of the fact that the MPSC, in its September 11, 2012 order, required investor-owned utilities, including plaintiff, to make available an opt-out provision for its customers when they "elect[] to implement AMI";

-6-

minds could not differ in finding that the smart meter installed by plaintiff qualified as a "meter."[7]

B

Second, the trial court properly concluded that defendants failed to demonstrate a genuine issue of material fact as to whether their privacy and health-related concerns constituted valid affirmative defenses that excused or justified their actions related to the smart meter. Mich Admin Code, R 460.3409(1) provides:

> The customer shall use reasonable diligence to protect utility-owned equipment on the customer's premises and to prevent tampering or interference with the equipment. *The utility may shut off service* in accordance with applicable rules of the commission *if the metering or wiring on the customer's premises has been tampered with or altered in any manner* that allows unmetered or improperly metered energy to be used or to cause an unsafe condition. [Emphasis added.]

Additionally, "a utility may shut off or terminate service to a residential customer" if "[t]he customer has refused to arrange access at reasonable times for the purpose of inspection, meter reading, maintenance, or replacement of equipment that is installed upon the premises, or for the removal of a meter," or if "[t]he customer has violated any rules of the utility approved by the commission so as to adversely affect the safety of the customer or other persons or the integrity of the utility system." Mich Admin Code, R 460.137(e), (g).

Likewise, there is no indication in plaintiff's tariff, which was approved by the MPSC, that defendants may violate the provisions of the tariff due to privacy or health-related concerns and continue to receive electricity service. Instead, the tariff expressly states under section C4.3, which pertains to applications for service, that "[a]pplicants for General Service or Industrial electric service will be required to sign a contract or agreement. However, whether an agreement is signed or not, *a customer is subject to the rules and rates of the Company and is responsible for the service used.*" [Emphasis added.] Additionally, section C5.4 of the tariff provides, in relevant part:

expressly recognized that plaintiff was currently installing AMI meters; and noted that plaintiff had already submitted a proposed opt-out tariff. Defendants offer no plausible explanation as to why, given the acknowledgment and regulation of this particular electricity-measuring device, the MPSC cannot appropriately consider this device to be a meter within its jurisdiction, or why the MPSC would acknowledge and regulate the use of an electricity-measuring device which does not qualify as a "meter" under the regulations promulgated, and the tariff approved, by the MPSC.

[7] Defendants also argue on appeal that smart meters do not qualify under the definition of "other equipment" under the MPSC regulations and plaintiff's tariff. However, because defendants failed to preserve this argument in the trial court, we decline to address it. See *Ligon v City of Detroit*, 276 Mich App 120, 129; 739 NW2d 900 (2007) (declining to review an issue that was not raised in or decided by the trial court).

> *As a condition of taking service*, authorized employees and agents of the Company shall have access to the customer's premises at all reasonable hours to install, turn on, disconnect, inspect, read, repair or remove its meters, and to install, operate and maintain other Company property, and to inspect and determine the connected electrical load. [Emphasis added.]

Moreover, MCL 750.383a provides that cutting, obstructing, or tampering with the property of an electric utility constitutes a felony, and we have found no authority indicating that privacy or health-related concerns may serve as a defense to actions in violation of MCL 750.383a, which further suggests that such defenses are not available.

> An affirmative defense is a defense that does not controvert the plaintiff's establishing a prima facie case, but that otherwise denies relief to the plaintiff. In other words, it is a matter that accepts the plaintiff's allegation as true and even admits the establishment of the plaintiff's prima facie case, but that denies that the plaintiff is entitled to recover on the claim for some reason not disclosed in the plaintiff's pleadings. [*Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 312; 503 NW2d 758 (1993) (citations omitted).]

See also MCR 2.111(F)(3). In the trial court, defendants failed to provide any authority in support of their claim that their privacy and health-related concerns constituted valid affirmative defenses to their violations of the relevant statutes, regulations, and tariff. Likewise, we find no basis for concluding that defendants' concerns should deny relief to plaintiff, and allow defendant to continue receiving electricity service from plaintiff, while defendants continue to violate the applicable rules. Given the record before us, we conclude that defendants must comply with the rules promulgated by the MPSC and the tariff provisions approved by the MPSC in order to continue receiving electricity service from plaintiff. Contrary to defendants' claims that receiving service from plaintiff is not a voluntary act because there is not a practical alternative to receiving electricity from plaintiff in southeastern Michigan, it is evident from the application procedures for receiving electricity service delineated in the MPSC rules and the tariff, and the various bases available for terminating service, that applying for and receiving electricity service from plaintiff is a voluntary act. See Mich Admin Code, R 460.106, .127, .137-.144; MPSC No. 10, § C4.3.

Furthermore, even if we assume, arguendo, that defendants' privacy or health-related concerns constitute valid defenses to their failure to comply with the relevant rules and tariff provisions, defendants failed to establish the factual bases of those defenses. "The party asserting an affirmative defense has the burden of presenting evidence to support it." *Attorney Gen ex rel Dep't of Environmental Quality v Bulk Petroleum Corp*, 276 Mich App 654, 664; 741 NW2d 857 (2007). In support of their privacy defense, defendants proffered a report prepared by the National Institute of Standards and Technology entitled *Guidelines for Smart Grid Cyber Security: Vol. 2, Privacy and the Smart Grid* (NISTIR 7628). Even assuming that this report constituted admissible evidence, see MCR 2.116(G)(6), this document does not demonstrate that the smart meter installed on defendants' property posed an actual risk to defendants' privacy; the report generally discussed the *possibility* of privacy risks related to smart meters and provided recommendations for entities participating in a smart grid. Further, there is no indication that the recommendations in the report were binding on plaintiff. Moreover, as discussed *infra*,

defendants have not shown that plaintiff's installation and use of a smart meter violated their Fourth Amendment rights.

In support of their health-related defense, defendants provided the affidavit of Dr. Hillman, discussing the health of a three-year-old child not involved in the instant case. The affidavit does not establish that the smart meter installed at defendants' home operated in a similar fashion, emitted the same level of "electricity [that] permeat[ed] the house," or caused similar health effects, and thus fails to be competent evidence that the smart meter installed on *defendants'* property posed a risk to *defendants'* health. Again, considering the evidence that was before the trial court, we find that reasonable minds could not differ in finding that defendants failed to provide a factual basis for their privacy and health-related defenses and, as a result, failed to demonstrate that a genuine issue of material fact exists with regard to the viability of those defenses.

III

Next, defendants assert that the trial court erred in granting plaintiff's motion to lift the partial stay imposed by the trial court after it granted partial summary disposition. We disagree.

We review the trial court's decision for an abuse of discretion.[8] "An abuse of discretion occurs when a trial court's decision is not within the range of reasonable and principled outcomes." *Sys Soft Technologies, LLC v Artemis Technologies, Inc*, 301 Mich App 642, 650; 837 NW2d 449 (2013) (quotation marks and citation omitted).

Defendants offer two primary reasons for why the trial court abused its discretion in lifting the stay. First, defendants argue that the purpose of the stay had not been fulfilled when the MPSC issued an order that approved plaintiff's opt-out plan because the MPSC, in issuing the order, did not consider the arguments that defendants raised in the instant case, i.e., plaintiff's authority to install smart meters as a condition of service and privacy and health concerns related

---

[8] The basis on which the trial court granted the stay is not clear from the lower court record received on appeal. Nevertheless, pursuant to the court rule cited by defendants as the basis of their motion for a partial stay, i.e., MCR 2.614(B), and the court rules cited by plaintiff on appeal, i.e., MCR 2.614(G)(1) and MCR 7.209(E)(1), the trial court *may* stay enforcement of a judgment or issue a stay of the proceedings. Because the use of the word "may" indicates that the court's action is discretionary rather than mandatory, *Church & Church Inc v A–1 Carpentry*, 281 Mich App 330, 339; 766 NW2d 30 (2008), aff'd on other grounds 483 Mich 885 (2009), we find, and the parties appear to agree, that review for an abuse of discretion is appropriate.

It appears that defendant intended to cite MCR 7.205(F)(3) in their motion for reconsideration and on appeal, but that rule has no applicability here. The trial court did not make a decision on the admissibility of evidence, and the basis of defendants' interlocutory appeal was not the admissibility of evidence. As such, there is no indication that the trial court was *required* stay the proceedings under MCR 7.205(F)(3) while defendants' application for leave to appeal was pending.

to smart meters, such that the order was "improper" and was likely to be overturned on appeal. Second, defendants argue that they had offered reasons for why they would be irreparably harmed if the trial court lifted the stay, whereas plaintiff was unable to establish irreparable harm, as demonstrated by the fact that plaintiff accommodated other customers who wanted the smart meters removed from their homes.

We find no basis for concluding that the trial court abused its discretion in granting plaintiff's motion to vacate the stay. The trial court's order granting the partial stay specifically stated that it was entered for the purpose of obtaining the [MPSC] ruling on Detroit Edison's proposed opt-out provision." Once the MPSC entered its order on May 15, 2013, approving DTE's "application for authority to implement an advanced metering infrastructure non-transmitting meter provision" and requiring DTE to file with the MPSC tariff sheets that complied with the opt-out provision procedures and fees delineated in Exhibit A to the order, the express purpose of the stay was fulfilled. Thus, the trial court's order vacating the stay was not outside the range of reasonable and principled outcomes.

Moreover, given the express purpose of the stay, defendants' claims in the trial court regarding the irreparable harm that they would allegedly face if the trial court lifted the stay were unavailing. Defendants' arguments in that respect constituted a collateral challenge to the validity or enforceability of the trial court's initial order. However, "[a]s with any investigation or litigation, if a litigant wishes to challenge a ruling by a court, the appropriate remedy is to seek a rehearing of the decision or file an appeal." *Fieger v Cox*, 274 Mich App 449, 459; 734 NW2d 602 (2007). Therefore, the trial court did not abuse its discretion in lifting the stay.

IV

Finally, defendants argue that plaintiff's installation of a smart meter on their home constituted a warrantless search in violation of the Fourth Amendment. We disagree.

This Court reviews de novo questions of constitutional law, such as whether an individual's Forth Amendment right against unreasonable searches has been violated. *Bonner v City of Brighton*, 495 Mich 209, 221; 848 NW2d 380 (2014); see also *People v Frohriep*, 247 Mich App 692, 696; 637 NW2d 562 (2001).

The United States and Michigan constitutions guarantee every person's right to be free from unreasonable searches. US Const, art IV; Const 1963, art 1, § 11. However, in order for Fourth Amendment protections to apply, *the government* must perform a search. *Lavigne v Forshee*, 307 Mich App 530, 537; 861 NW2d 635 (2014); see also *People v Taylor*, 253 Mich App 399, 404; 655 NW2d 291 (2002), citing *Katz v United States*, 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967). "[T]he Fourth Amendment proscribes only government action and is not applicable to a search or seizure, even an unreasonable one, conducted by a private person not acting as an agent of the government or with the participation or knowledge of any government official." *People v McKendrick*, 188 Mich App 128, 141; 468 NW2d 903 (1991); see also *id.* at 142-143 (identifying two factors that must be shown in order to conclude that a search is proscribed by the Fourth Amendment).

First, defendants have not shown, or even argued, that an illegal search has already been performed through the smart meter that was installed on their property. Instead, their arguments in the lower court and on appeal focus on the *potential* for smart meters to collect information from the homes of Americans in the future.[9] Further, defendants have failed to establish that plaintiff's installation of smart meters constitutes governmental action for Fourth Amendment purposes. Even if the state and federal governments have advocated or incentivized, as a matter of public policy, the use of smart meters, there is no indication that the government controls the operations of plaintiff, an investor-owned electric utility, or that plaintiff acts as an agent of the state or federal governments. Accordingly, we reject defendants' claim that plaintiff's installation of a smart meter violated their Fourth Amendment rights.

V

Defendants also raised several unpreserved issues in their brief on appeal and during their oral arguments in this Court. First, defendants claim the trial court erred in failing to grant reconsideration of its order granting partial summary disposition on the basis of new evidence. However, defendants' motion for reconsideration was not based on new evidence, but instead raised the same claims, which the trial court declined to re-decide. In addition, defendants challenge whether the doctrine of collateral estoppel applies in this case, whether defendants' pleadings should be considered as admissible evidence in support of their health-related claims because they filed the pleadings in propria persona, whether plaintiff violated MCL 750.539d when it installed a smart meter on defendants' property, and whether plaintiff's opt-out provision actually allows customers to fully opt out of the smart meter program. Because these issues were not raised in or decided by the trial court, we decline to review them on appeal. See *Ligon v City of Detroit*, 276 Mich App 120, 129; 739 NW2d 900 (2007).

---

[9] The trial court only addressed defendants' Fourth Amendment claim to the extent that their privacy concerns could preclude enforcement of defendants' responsibilities and plaintiff's ability to install a smart meter on their property under the relevant statutes, regulations, and rules. However, defendants lack standing to raise a Fourth Amendment challenge under the circumstances given that they have failed to demonstrate, or even allege, that they suffered an "injury in fact" that is actual or imminent, not conjectural or hypothetical, *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 398; 792 NW2d 686 (2010), and that is personal, *People v Lombardo*, 216 Mich App 500, 505; 549 NW2d 596 (1996) ("The Fourth Amendment right to freedom from unreasonable searches and seizures *is personal*, and the defendant bears the burden of proving standing as a result of a personal expectation of privacy.").

Affirmed.  Plaintiff, being the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Patrick M. Meter
/s/ Mark J. Cavanagh
/s/ Kurtis T. Wilder