# STATE OF MICHIGAN

# COURT OF APPEALS

EARL PEGUES, L.L.C.,

Plaintiff-Appellant,

v

IZIS GENERAL CONTRACTORS, L.L.C.,

Defendant-Appellee.

UNPUBLISHED
October 6, 2016

No. 327931
Saginaw Circuit Court
LC No. 14-022656-CK-3

Before: RIORDAN, P.J., and METER and OWENS, JJ.

PER CURIAM.

Plaintiff appeals as of right an order granting defendant's motion for summary disposition under MCR 2.116(C)(10). We affirm.

On March 27, 2014, plaintiff filed a complaint alleging the following: It retained defendant in July 2012 to construct a restaurant, Popeyes Louisiana Kitchen, in Saginaw for $1,050,000. Plaintiff and defendant agreed to three additions, related to landscaping, for $3,000; a security system, for $1,973; and a digital menu board, for $17,900.38—for a total of $22,873.38. The parties also agreed that plaintiff would receive a $5,000 credit for an unneeded standard menu board, leaving a total contract price of $1,067,871.30.[1] Before the date of the final sworn statement submitted to the title company, plaintiff had paid defendant $541,000, but defendant requested a payment of $649,872.69, which the title company disbursed, leaving an "overbill" to plaintiff of approximately $123,001. Defendant did not notify plaintiff of any "equitable adjustments" and defendant refused to return the excess payment.

Plaintiff alleged breach of contract in Count I. In Count II, plaintiff alleged that defendant, in the sworn statement, fraudulently misrepresented the amount due. Plaintiff alleged conversion of the $123,001 in Count III and unjust enrichment in Count IV.

On March 20, 2015, defendant filed a motion for summary disposition under MCR 2.116(C)(10). Defendant asserted that, according to the sworn statement, there were 12, not three, changes to the original contract, resulting in an adjusted contract price of $1,143,064.45.

---

[1] Our calculations ($1,050,000 plus $22,873.38 minus $5,000) provide a total of $1,067,873.38.

Defendant further asserted that, according to the sworn statement, plaintiff had paid defendant $493,191.76, resulting in a balance due of $649,872.69, which was properly disbursed from the escrow account by the title company. Defendant attached to its motion a copy of the sworn statement, which reflects the asserted numbers; the statement was signed on October 11, 2012, by Earl Pegues (hereinafter "Pegues"), plaintiff's sole member, and by Abdul Alnobani, defendant's sole member.

Defendant also attached to its motion the transcript of the deposition of Pegues, during which Pegues claimed that plaintiff had paid defendant $541,000 by the time of the sworn statement. When asked if he voiced any objection to the indication on the sworn statement that plaintiff had paid defendant approximately $493,191, Pegues stated, "I gave the bank my information . . . . I did not look at these figures. In fact, I didn't even understand all these numbers on here." Pegues stated, "If I had went [sic] over the figures I would have understood . . . ." When asked what he did when he saw on the sworn statement that approximately $649,872 was owed, Pegues stated, "I did not understand the Sworn Statement when the bank gave it to me to sign." He stated that he was simply signing something that would allow subcontractors to be paid "the amount that was owed to them on their bid." Defendant's attorney asked, "why would you sign a document on October 11th, 2012 and say I thought I was signing a document [indicating] that they were going to be paid some amounts, but not the amounts on the document I'm signing?" Pegues replied, "There's no way to explain it. It was my oversight that I didn't read the contract and the banker didn't explain it to me. It was my oversight." Pegues stated that he did not understand the sworn statement at the time he signed it but that he now understood it because he "explained it to [himself] by "read[ing] the contract . . . ." He claimed that once he read the contract, he "started to realize that all this stuff was incorrect." Pegues admitted that the title company was working on his behalf and not on behalf of defendant.

Defendant argued that plaintiff's breach-of-contract claim was untenable because plaintiff was bound by the terms of the sworn statement. Defendant further argued that plaintiff's fraud claim was untenable because plaintiff had the means to determine the accuracy of the sworn statement. Defendant argued that the conversion claim was untenable because defendant obtained the funds in question with plaintiff's consent. Finally, defendant argued that unjust enrichment was not a viable cause of action here because an express contract covered the same subject matter.

In response to defendant's motion, plaintiff argued that there were only three change orders (those discussed above) that were verbally agreed upon and that no other change orders were agreed upon either verbally or in writing.[2] It argued, therefore, that only those three changes were effective and that Counts I, II, and III of the complaint were viable based on this alleged fact. Plaintiff agreed that count IV should be dismissed.[3]

---

[2] Alnobani testified that Pegues had approved all of the changes verbally "on the site."

[3] On May 4, 2015, the trial court dismissed Count IV.

Oral arguments took place on May 4, 2015. The trial court accepted at face value plaintiff's assertion that Pegues did not know about the nine disputed change orders. However, the court went on to state:

> [T]he contract in question does not require that changes in the work be reduced to writing in any particular form or at any particular time; only that the changes, quote, in writing, end quote, occur. So Mr. Pegues' signature on the sworn statement satisfies this requirement. . . .
>
> The act of placing one's signature on a legal document, whether in writing or by facsimile or stamp, is regarded as the most deliberate, conscious way that a person may manifest his intent to consent to, and by bound by, the terms of that document . . . .
>
> [T]he admitted fact is that [Pegues] did not review the document. . . .
>
> [A] party cannot sign a document without reading it, and later protest about terms that there was an opportunity to object to.
>
> So the Court holds, as a matter of law, that Mr. Pegues' signature on the sworn statement constituted a ratification of the changes that were clearly listed in it. Therefore, all of plaintiff's claims fail.

On May 29, 2015, the trial court entered its written order granting defendant's motion for summary disposition and dismissing plaintiff's complaint.

We review de novo a trial court's grant of summary disposition. *Detroit Edison Co v Stenman*, 311 Mich App 367, 377; 875 NW2d 767 (2015). In reviewing a motion under MCR 2.116(C)(10), we consider the affidavits, pleadings, depositions, admissions, and documentary evidence in the light most favorable to the party opposing the motion. *Id*. "[S]ummary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgement as a matter of law." *Id*. (citation and quotation marks omitted).

Plaintiff argues that its claim for breach of contract is viable because "[t]here are no signed written change orders" and "[t]here is no written amendment to the contract." Plaintiff claims that defendant "offers no law in support of its position that by signing the Sworn Statement, . . . Plaintiff is bound by the amounts claimed therein." Plaintiff claims that defendant "breached the contract when [it] requested and accepted payment in excess of the contract price . . . ."

Plaintiff's argument is without merit. Article 10.1 of the original contract states:

> The Owner, without invalidating the Contract, may order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly in writing. If the Owner and Contractor can not [sic] agree to a change in the Contract Sum, the Owner shall pay the Contractor its actual cost plus reasonable overhead and profit.

-3-

As noted by defendant, the article does not dictate the form or timing of any writing pertaining to changes and corresponding adjustments in the contract sum. The sworn statement clearly identifies the "change orders" and the corresponding adjustments to the contract price. The sworn statement clearly identifies the "amount already paid" and the "amount currently owing." Pegues signed the sworn statement and admitted at his deposition that he did not read the sworn statement before signing it but that he understood it once he did read it. Pegues admitted that it was his "oversight" that caused him to fail to read the sworn statement. It is well-settled that a person who signs a contract cannot have the contract set aside merely because he was negligent in failing to read the terms. *Shay v Aldrich*, 487 Mich 648, 680-681; 790 NW2d 629 (2010). "[A] person who signs and executes an instrument without inquiring as to its contents cannot have the instrument set aside on the ground of ignorance of the contents." *Christensen v Christensen*, 126 Mich App 640, 645; 337 NW2d 611 (1983). The sworn statement is clear and enforceable. Plaintiff's assertion that the Construction Lien Act, MCL 570.1101 *et seq.*, does not require an owner to sign a sworn statement is a red herring, because the fact remains that Pegues *did* sign the sworn statement in the present case and thus is bound by its terms.

Plaintiff argues that its claim of fraudulent misrepresentation is viable because Pegues only agreed to three of the change orders, with defendant making the other changes without his approval. However, "[t]here can be no fraud where a person has the means to determine that a representation is not true." *Nieves v Bell Industries, Inc*, 204 Mich App 459, 464; 517 NW2d 235 (1994); see also *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 690; 599 NW2d 546 (1999). Plaintiff clearly had the means to know how much had been paid to defendant and whether change orders had been agreed upon, and the original contract expressly provided for changes to the project and adjustments in price. Plaintiff has not set forth a case of fraud.[4]

With regard to conversion, plaintiff asserts that defendant received more money than it was entitled to, without plaintiff's consent. This assertion is patently without merit in light of the fact that Pegues signed the sworn statement. See *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 111-112; 593 NW2d 595 (1999) (a successful conversion claim requires that the defendant obtained funds without the owner's consent).

The trial court did not err in granting defendant's motion for summary disposition.

Affirmed.

/s/ Michael J. Riordan
/s/ Patrick M. Meter
/s/ Donald S. Owens

---

[4] We note that, on appeal, plaintiff attempts to expand upon its pleaded fraud claim. The fraud claim in the complaint was based upon allegedly false representations made in the October 11, 2012, sworn statement, not upon allegedly false representations in the original contract.