# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Application of CONSUMERS ENERGY COMPANY to Increase Rates.

---

ASSOCIATION OF BUSINESSES ADVOCATING TARIFF EQUITY,

        Appellant,

v

CONSUMERS ENERGY COMPANY,

        Petitioner-Appellee,

and

MICHIGAN PUBLIC SERVICE COMMISSION, MICHIGAN CABLE TELECOMMUNICATIONS ASSOCIATION, MICHIGAN ENVIRONMENTAL COUNCIL, NATURAL RESOURCES DEFENSE COUNCIL, and HEMLOCK SEMICONDUCTOR CORPORATION,

        Appellees.

UNPUBLISHED
October 10, 2017

No. 330675
MPSC
LC No. 00-017735

---

*In re* Application of CONSUMERS ENERGY COMPANY to Increase Rates.

---

RESIDENTIAL CUSTOMER GROUP and MICHELLE RISON,

        Appellants,

v

CONSUMERS ENERGY COMPANY,

No. 330745
MPSC
LC No. 00-017735

-1-

Petitioner-Appellee,

and

MICHIGAN PUBLIC SERVICE COMMISSION,
MICHIGAN CABLE TELECOMMUNICATIONS
ASSOCIATION, MICHIGAN
ENVIRONMENTAL COUNCIL, NATURAL
RESOURCES DEFENSE COUNCIL, and
HEMLOCK SEMICONDUCTOR
CORPORATION,

Appellees.

_In re_ Application of CONSUMERS ENERGY
COMPANY to Increase Rates.

ATTORNEY GENERAL,

Plaintiff-Appellant,

v

CONSUMERS ENERGY COMPANY,

Defendant-Appellee,

and

MICHIGAN PUBLIC SERVICE COMMISSION,
MICHIGAN ENVIRONMENTAL COUNCIL,
NATURAL RESOURCES DEFENSE COUNCIL,
and HEMLOCK SEMICONDUCTOR
CORPORATION,

Appellees.

No. 330797
MPSC
LC No. 00-017735

Before: MARKEY, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

In these consolidated appeals, appellants Association of Businesses Advocating Tariff Equity (ABATE) (Docket No. 330675), Residential Customer Group and Michelle Rison (Docket No. 330745), and the Attorney General (Docket No. 330797) claim appeals from a November 19, 2015 order of the Michigan Public Service Commission (PSC) approving a rate

increase of 10.3% for appellee Consumers Energy Company and authorizing Consumers to continue its smart meter program. For the reasons stated below, we affirm.

## I. FACTS

On December 5, 2014, Consumers filed an application to increase its rates for the sale of electricity. Consumers used a projected test year ending May 31, 2016, and stated that without rate relief it would experience an annual revenue deficiency of approximately $166 million. Consumers stated that its need for additional revenue was based on the following factors: (1) the purchase of a 450 megawatt (MW) natural gas plant to partially offset the projected capacity shortfall resulting from the retirement of seven coal plants in April 2016; (2) continuing investments in electric generation and distribution assets to comply with legal and environmental requirements; (3) continuing investments in electric generation and distribution assets to provide safe and reliable service; (4) ongoing investments in technology improvements; and (5) increased operating and maintenance (O&M) expenses to improve reliability of service. Consumers sought approximately $166 million in rate increases and the authorization to produce a return on common equity (ROE) of 10.7%.

On June 4, 2015, Consumers self-implemented[1] a rate increase of $110 million above its current rates. Consumers also eliminated a customer credit. The rate increase and the elimination of the credit raised Consumers' retail rates by $166 million.

The Administrative Law Judge (ALJ) issued a Proposal for Decision (PFD) recommending that Consumers' overall rate of return be set at 6.09%, including an ROE of 10.00%. The PFD noted that Consumers was requesting a rate increase for various purposes, including continuing technology investments in its Advanced Metering Infrastructure (AMI) system,[2] and concluded that recovery of the costs of the projected test year AMI investment should be allowed.

On November 19, 2015, the PSC, in a 2-1 decision, issued an order authorizing Consumers to raise its rates. The PSC rejected requests by the Attorney General and the RCG to terminate the AMI program, reasoning as follows:

---

[1] If the PSC does not issue an order within 180 days after the filing of an application for a rate increase, a utility may self-implement a rate increase up to the amount requested. If the utility does so and the PSC issues an order approving a rate increase lower than that requested, the utility must refund the excess amount collected to its customers. MCL 460.6a(2).

[2] An AMI meter measures and records real-time data on power consumption and reports that consumption to the utility on a regular basis. An AMI meter is also known as a "smart meter." See *In re Applications of Detroit Edison Co*, 296 Mich App 101, 114; 817 NW2d 630 (2012). The PSC has issued a series of orders approving Consumers' pilot AMI program (Case No. U-16191), authorizing Consumers to proceed with Phase 2 of its AMI deployment program (Case No. U-16794), and granting rate relief for and authorizing continuation of the program (Case No. U-17087).

The Commission adopts the findings and recommendations of the ALJ. As the ALJ relates, the Commission has thoroughly vetted the underlying cost/benefit analyses and the AMI program itself and will not revisit those issues. *See*, November 2, 2009 and October 7, 2014 orders in Case No. U-15645; November 4, 2010 order in Case No. U-16191; June 7, 2012 order in Case No. U-16794; and June 28, 2013 order in Case No. U-17087. The AMI program is correctly characterized as a grid modernization program that cannot be replaced by renewable energy or energy efficiency measures. The Commission finds that no party provided evidence showing that conditions have changed such that the current base rate and depreciation treatment of these expenses should be changed. Consumers shall continue to provide cost/benefit analyses as long as the program is still in the implementation phase. The Commission approves Consumers' proposed test year expenditure, minus the contingency expenditure identified by the Staff.

The PSC reviewed the evidence and the parties' recommendations regarding Consumers' request for an ROE of 10.7%, presented by the parties, noting that Consumers took the position that if the PSC did not approve an ROE of 10.7%, it should not set the rate lower than the current 10.3%. The PSC concluded:

The Commission agrees with the utility and finds that the current 10.3% ROE should be continued. While the ALJ provided an excellent analysis of this issue, the Commission finds that the current ROE will best achieve the goals of providing appropriate compensation for risk, ensuring the financial soundness of the business, and maintaining a strong ability to attract capital.

Consumers has planned an ambitious capital investment program, much of which is related to environmental and generation expenditures that are unavoidable and are saddled with time requirements. The Commission observes that 10.3% is at the upper point of the Staff's recommended ROE range, and Consumers showed, using the Staff's exhibit, that the average ROE resulting from recently decided cases in Michigan, Indiana, Ohio, Pennsylvania, and Wisconsin was 10.26%. The Commission acknowledges that ROEs, nationally, have shown a steady decline (as they have in Michigan), and agrees with the Attorney General that Michigan's economy has stabilized; but finds that, under present circumstances, it is reasonable to assume that investor expectations may be rising. Consumers' recently-improved credit ratings will help the utility secure the financing required to carry out its goals. Thus, the Commission favors adopting an ROE of 10.30%.

The dissenting Commissioner concluded that approving an ROE of 10% was more reasonable based on the record.

ABATE, RCG and Rison, and the Attorney General claimed appeals from the PSC's order. This Court consolidated the appeals for purposes of hearing and decision.

## II. STANDARD OF REVIEW

The standard of review for PSC orders is narrow and well defined. Pursuant to MCL 462.25, all rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the PSC are presumed, prima facie, to be lawful and reasonable. *Mich Consol Gas Co v Pub Serv Comm*, 389 Mich 624, 635-636; 209 NW2d 210 (1973). A party aggrieved by an order of the PSC has the burden of proving by clear and convincing evidence that the order is unlawful or unreasonable. MCL 462.26(8). To establish that a PSC order is unlawful, the appellant must show that the PSC failed to follow a mandatory statute or abused its discretion in the exercise of its judgment. *In re MCI Telecom Complaint*, 460 Mich 396, 427; 596 NW2d 164 (1999). An order is unreasonable if it is not supported by the evidence. *Assoc Truck Lines, Inc v Pub Serv Comm*, 377 Mich 259, 279; 140 NW2d 515 (1966).

A final order of the PSC must be authorized by law and be supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; *Attorney Gen v Pub Serv Comm*, 165 Mich App 230, 235; 418 NW2d 660 (1987).

We give due deference to the PSC's administrative expertise, and we are not to substitute our own judgment for that of the PSC. *Attorney Gen v Pub Serv Comm No 2*, 237 Mich App 82, 88; 602 NW2d 225 (1999). We give respectful consideration to the PSC's construction of a statute that the PSC is empowered to execute, and we will not overrule that construction absent cogent reasons. If the language of a statute is vague or obscure, the PSC's construction serves as an aid to determining the legislative intent, and will be given weight if it does not conflict with the language of the statute or the purpose of the Legislature. However, the construction given to a statute by the PSC is not binding on this Court. *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 103-109; 754 NW2d 259 (2008). Whether the PSC exceeded the scope of its authority is a question of law that we review de novo. *In re Complaint of Pelland Against Ameritech Mich*, 254 Mich App 675, 682; 658 NW2d 849 (2003).

## III. ANALYSIS

Appellants ABATE and the Attorney General argue that the PSC erred by approving an ROE of 10.3% for Consumers. Appellants assert that the ROE of 10.3% approved by the PSC does not have support in the record. No party advocated for that particular ROE; the PSC's choice appears to have been a compromise among the ROEs recommended by the parties. The PSC provided no rationale for choosing the ROE that it did.

We hold that the PSC's order approving an ROE of 10.3% was lawful and reasonable, and the PSC's decision is not arbitrary or capricious.

The establishment of a reasonable utility rate is not subject to precise computation. What is reasonable "depends upon a comprehensive examination of all factors involved, having in mind the objective sought to be attained in its use." *Meridian Twp v East Lansing*, 342 Mich 734, 749; 71 NW2d 234 (1955) (township failed to meet burden of showing that rate charged for water was unreasonable). As long as the PSC chooses a rate that is neither so low as to be confiscatory nor so high as to be oppressive, the PSC has discretion to set the rate at the level it chooses. *Mich Bell Tel Co v Pub Serv Comm*, 332 Mich 7, 26; 50 NW2d 826 (1952) (PSC's establishment of reduced telephone rates neither confiscatory nor oppressive).

Testimony from witnesses for Consumers and the Staff supports the approval of an ROE of 10.3%. Consumers' witness Rao recommended an ROE range of 10.50% to 10.90% after adjusting for economic conditions; however, his quantitative models produced a range from 8.94% to 10.69 %. Staff witness Megginson testified that an ROE in the range of 8.3% to 10.3% would be reasonable. Megginson recommended the adoption of an ROE of 10.0%, but did not suggest that the adoption of a different rate would be unreasonable. The PSC was entitled to rely on the evidence from these experts, even if other witnesses presented contradictory testimony. *In re Application of Consumers Energy to Increase Electric Rates (On Remand)*, 316 Mich App 231, 240; 891 NW2d 871 (2016), citing *Great Lakes Steel Div of Nat'l Steel Corp v Mich Pub Serv Comm*, 130 Mich App 470, 481; 344 NW2d 321 (1983). Furthermore, the fact that one Commissioner dissented and would have established Consumers' ROE at 10% does not mandate a conclusion that the PSC's decision was unreasonable. *ABATE v Pub Serv Comm*, 208 Mich App 248, 265; 527 NW2d 533 (1994) (dissent of Commissioner does not require this Court to find that the PSC's decision not supported by the requisite evidence).

The PSC noted that the rate of 10.3% was within the Staff's recommended range, and was consistent with ROEs approved in other Midwestern states. The PSC acknowledged that ROEs were trending downward nationally, but noted that Consumers' credit rating had improved, and reasoned that lowering the company's ROE would impede the company's ability to secure financing for future investments. The PSC is required to "consider and give due weight to all lawful elements necessary" to determine an appropriate rate. MCL 460.557(2). In determining rates, the "PSC is not bound by any single formula or method and may make pragmatic adjustments when warranted by the circumstances." *Detroit Ed Co v Pub Serv Comm*, 221 Mich App 370, 375; 562 NW2d 224 (1997).

The PSC examined the evidence and determined that an ROE of 10.3% was appropriate. The PSC acted consistently with its statutory authority, MCL 460.557(2), and acted within its discretion to determine an appropriate ROE. *Detroit Ed Co*, 221 Mich App at 375. Neither ABATE nor has the Attorney General shown that the PSC's order was unlawful or unreasonable. MCL 462.28.

Next, appellants RCG and Rison argue that Consumers lacked the authority, absent specific statutory guidance, to mandate the installation of smart meters in customers' homes by approving Consumers' smart meter program and its attendant tariffs on an "opt-out" basis. The PSC foreclosed the presentation of evidence concerning health questions and privacy matters (including data regarding customer activities and appliances) in prior proceedings, some of which were not contested cases. This defective process prevented the introduction of evidence regarding an alternative "opt-in" approach, which would have respected customer choices and concerns.

We hold that the PSC did not lack jurisdiction to approve implementation of the smart meter program and the attendant fees on customers.

The PSC has only the authority granted to it by statute. The PSC has broad authority to regulate rates for public utilities, but that authority does not include the power to make management decisions for utilities. *Consumers Power Co v Pub Serv Comm*, 460 Mich 148, 157-158; 596 NW2d 126 (1999) (PSC lacked authority to order utilities to transport electricity

produced and sold by other utilities to customers); *Union Carbide Corp v Public Serv Comm*, 431 Mich 135, 148-150; 428 NW2d 322 (1998) (PSC lacked authority to forbid the operation of a facility).

Appellants correctly point out that the PSC has no statutory authority to enable Consumers to require all customers to participate in the AMI program and accept a smart meter, or to pay fees if they choose to opt-out of the AMI program. However, no such statute exists because the decision regarding what type of equipment to deploy as an upgrade to infrastructure can only be described as a management prerogative. Consumers applied for approval of its AMI program; but that fact does not mandate a conclusion that Consumers' decision regarding what meters to use is not a management decision. Appellants' suggestion that the PSC could order Consumers to develop an opt-in program is clearly the type of action found invalid in *Union Carbide*, 431 Mich at 148-150.

Appellants' reliance on *Attorney General v Pub Serv Comm*, 269 Mich App 473; 713 NW2d 290 (2005), is misplaced. In that case, this Court held that the PSC lacked the statutory authority to authorize Consumers to impose an extra charge on all customers, including customers who had not agreed to pay premium rates to receive green power, to finance renewable energy programs. *Id*. at 481-482. In the instant case, Consumers proposed opt-out fees, based on cost-of-service principles, to be imposed only on those customers who chose not to participate in the AMI program. The fees were designed to cover the additional costs of providing service to those customers. Approval of the opt-out fees was a proper exercise of the PSC's ratemaking authority. MCL 460.6a(1); *Ford v PSC*, 221 Mich App 370, 385; 562 NW2d 224 (1997).

Next, appellants RCG and Rison argue that the PSC's disregard of Consumers' customer concerns about privacy, data collection, and transmittal of data violates Due Process and Fourth Amendment principles.

We hold that the installation of a smart meter on a customer's home does not violate the customer's rights under the Fourth Amendment because Consumers is not a state actor.

We review de novo a question of constitutional law, including whether an individual's Fourth Amendment right to be free from unreasonable searches has been violated. *Detroit Ed Co v Stenman*, 311 Mich App 367, 386-388; 875 NW2d 767 (2015).

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Fourth Amendment applies only to government actions, and is not applicable to a search performed by a private actor not acting as an agent of the government. See *People v McKendrick*, 188 Mich App 128, 141; 468 NW2d 903 (1991). Appellants have not established

that the installation of either a transmitting or a non-transmitting AMI meter constitutes a search or that even if it did, that Consumers acts as an agent of the government.

The argument that the installation of a smart meter constituted state action and violated a customer's Fourth Amendment protections was raised and rejected in *Stenman*, 311 Mich App 367. In that case, Detroit Edison filed suit in circuit court against the defendants who had removed a smart meter installed on their property. The defendants filed a counterclaim alleging, among other things, that the smart meter was a surveillance device, the installation of which violated the Fourth Amendment. The trial court granted partial summary disposition in favor of the plaintiff. *Stenman*, 311 Mich App at 370-374. On appeal, the defendants argued that the installation of a smart meter on their home constituted a warrantless search and thus violated the Fourth Amendment. This Court disagreed, stating:

> The United States and Michigan Constitutions guarantee every person's right to be free from unreasonable searches. US Const, Am IV; Const 1963, art 1, § 11. However, in order for Fourth Amendment protections to apply, *the government* must perform a search. *Lavigne v Forshee*, 307 Mich App 530, 537; 861 NW2d 635 (2014); see also *People v Taylor*, 253 Mich App 399, 404; 655 NW2d 291 (2002), citing *Katz v United States*, 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967). "[T]he Fourth Amendment proscribes only government action and is not applicable to a search or seizure, even an unreasonable one, conducted by a private person not acting as an agent of the government or with the participation or knowledge of any government official." *People v McKendrick*, 188 Mich App 128, 141; 468 NW2d 903 (1991); see also *id*. at 142-143 (identifying two factors that must be shown in order to conclude that a search is proscribed by the Fourth Amendment).

> First, defendants have not shown, or even argued, that an illegal search has already been performed through the smart meter that was installed on their property. Instead, their arguments in the lower court and on appeal focus on the *potential* for smart meters to collect information from the homes of Americans in the future. Further, defendants have failed to establish that plaintiff's installation of smart meters constitutes governmental action for Fourth Amendment purposes. Even if the state and federal governments have advocated or incentivized, as a matter of public policy, the use of smart meters, there is no indication that the government controls the operations of plaintiff, an investor-owned electric utility, or that plaintiff acts as an agent of the state or federal governments. Accordingly, we reject defendants' claim that plaintiff's installation of a smart meter violated their Fourth Amendment rights. [*Stenman*, 311 Mich App at 387-388 (emphasis in original).]

The RCG and Rison have made no attempt to distinguish *Stenman*; in fact, the RCG and Rison make no reference to the case. This Court's decision in *Stenman* controls on this issue, MCR 7.215(C)(2), and mandates rejection of appellants' argument.

Finally, appellants RCG and Rison argue that the PSC's order unlawfully and unreasonably continues surcharges on customers who opt out of the AMI program.

Ratemaking is a legislative rather than a judicial function. For that reason, the doctrines of res judicata and collateral estoppel do not apply in a strict sense. Nevertheless, "issues fully decided in earlier PSC proceedings need not be 'completely relitigated' in later proceedings unless the party wishing to do so establishes by new evidence or a showing of changed circumstances that the earlier result is unreasonable." *In re Application of Consumers Energy Co for Rate Increase*, 291 Mich App 106, 122; 804 NW2d 574 (2010), quoting *Pennwalt Corp v Pub Serv Comm*, 166 Mich App 1, 9; 420 NW2d 156 (1988).

The RCG and Rison contend that surcharges, including a one-time charge paid by a customer who declines to have a smart meter installed or who requests that a smart meter be removed, as well as a monthly surcharge, are not supported by the requisite evidence and should have been eliminated by the PSC.

This issue was recently decided by the PSC in another case on remand from this Court. In Case No. U-17087, another matter involving Consumers Energy Company, the PSC entered an order on June 28, 2013, approving opt-out fees for customers who requested a non-transmitting meter. The Attorney General and individual appellants Rison, et al, appealed the PSC's order, and challenged the imposition of the opt-out fees and the amount of those fees. In *Attorney General v Pub Serv Comm*, unpublished opinion per curiam of the Court of Appeals, issued April 30, 2015 (Docket Nos. 317434, 317456),[3] this Court, in Docket No. 317456, remanded the matter to the PSC to conduct a contested case hearing to examine the opt-out tariff.

In an order entered on March 29, 2016, in Case No. U-17087, the PSC indicated that, on remand, it would address the purpose of the opt-out fees, whether the fees constituted reimbursement for the cost of services related to non-transmitting meters, and whether any such costs were already accounted for in Consumers' base rates.

On January 19, 2017, the ALJ issued a PFD finding that the opt-out fees represented reimbursement for costs of service, and that no expenses related to Consumers' opt-out program are accounted for in Consumers' base rates. The PFD recommended that the PSC reaffirm its June 28, 2013 decision.

On July 12, 2017, the PSC issued an order on remand in Case No. U-17087 adopting the findings and recommendations in the PFD. The PSC found that the opt-out tariffs were cost-

---

[3] In *In re Application of Consumers Energy to Increase Electric Rates*, 498 Mich 967; 873 NW2d 108 (2016), our Supreme Court reversed the portion of this Court's decision addressing the Attorney General's claim of appeal in Docket No. 317434 and remanded the case for consideration of the merits of that appeal. This Court thereafter issued a published decision in Docket No. 317434. *In re Application of Consumers Energy to Increase Electric Rates (On Remand)*, 316 Mich App 231; 891 NW2d 871 (2016). However, this Court's initial decision in Docket No. 317456 was not affected by the Supreme Court's remand order or this Court's decision on remand. See *In re Application of Consumers Energy to Increase Electric Rates (On Remand)*, *id*. at 234 n 1.

based, and that Consumers provided an explanation of the service principles used to determine those costs. Specifically, the PSC stated:

> Opt-out fees represent incremental costs that are incurred solely in order to be able to offer the opt-out program; opt-out customers are protected by the credits from the costs of AMI, and customers who use standard equipment are protected from subsidizing customers who choose non-standard equipment. The amounts collected from opt-out customers are credited to base rate calculations to ensure that there is no double recovery. The Court of Appeals has found that smart meters are standard utility equipment, and that the choice of metering technology is a utility management prerogative. The opt-out tariff collects costs associated with the development and operation of a non-standard metering option. The Commission has previously rejected the RCG's argument regarding the use of self-reads as an alternative to the opt-out program. The Commission has made it a priority to limit estimated and customer self-reading of meters in order to increase the accuracy of meter reading and billing. Commission rules require utilities to read a certain percentage of electric meters. [PSC Order, 12 (internal citations omitted).]

The PSC affirmed the opt-out tariffs and credits related to the tariffs originally approved in the June 28, 2013, order in Case No. U-17087 (*Id*. at 16).

In the instant case, appellants are requesting that this Court examine the opt-out fees in a manner similar to that undertaken by the PSC in Case No. U-17087. We decline to do so, and defer to the decision on remand issued by the PSC in Case No. U-17087. That decision is based on previous decisions of the PSC and this Court. Appellants seek to reargue the matter yet again, but have put forth nothing that would require this Court to conclude that the previous decision as reflected most recently in the order in Case No. U-17087 is unreasonable and should not be followed. *In re Application of Consumers Energy Co*, 291 Mich App at 122.

Affirmed.

/s/ Jane E. Markey
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra

-10-