# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 27, 2018

Plaintiff-Appellee,

v

No. 339909
Ingham Circuit Court
LC No. 17-000010-FC

JASON LANELLE TOWNSEND,

Defendant-Appellant.

Before: BOONSTRA, P.J., and JANSEN and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his conviction of first-degree criminal sexual conduct involving personal injury, MCL 750.520b(1)(f). Defendant was sentenced as a fourth habitual offender, MCL 769.12, to serve 25 to 50 years in prison. We affirm.

## I. FACTS

This case arises from defendant's nonconsensual anal penetration of the victim, with whom defendant was having a consensual sexual relationship. The victim and defendant initially met on social media and developed a relationship that the victim described as "friends with benefits." By contrast, defendant described the relationship as sexual only, not a friendship. They agree that they had sexual relations on about seven occasions at the victim's home, but were not dating.

On October 27, 2016, defendant and two friends went to the victim's place of employment to apply for jobs. He testified that it was his understanding that the victim had agreed to assist him with getting a job there. The two agreed to meet at her home after the victim was done with work. The victim testified that the purpose of the meeting was to have sex. Defendant testified that he did not know the purpose of the meeting, and also testified that he thought the purpose was to talk about his job application, but agreed that the only reason he had gone to the victim's home in the past was to have sex with her. Defendant also testified that the encounter was "supposed to be a quickie" because someone was waiting for him in the car.

When defendant arrived, he and the victim engaged in consensual oral and vaginal intercourse. According to the victim, defendant then tried to put his penis into her anus and she told him "no." The victim testified at trial that despite her protests, defendant forcibly held her down and penetrated her anus with his penis for about three minutes. By contrast, defendant

-1-

testified that after they had had consensual oral and vaginal sex, he was preparing to leave when the victim suggested anal sex. He admitted that during the anal sex the victim said "don't" and "stop," but he believed that it was part of role-playing that they were engaging in, and so did not stop. Afterward, defendant left. The victim discovered that she was bleeding from her anus and arranged transportation to the hospital, where it was confirmed that she had suffered injuries from forced trauma. Subsequent analysis of swabs taken of the victim's vaginal and anal areas during the physical examination confirmed the presence of defendant's DNA. Defendant was charged with first-degree criminal sexual conduct.

Unbeknownst to defendant, the victim made an audio recording with her telephone of their sexual encounter. She testified that she had previously made similar audio recordings of her sexual encounters with defendant and with other men. At trial, the audio recording was played for the jury and defendant admitted that the recording does not include any indication that the victim suggested or agreed to anal sex. Defendant sought to introduce evidence of prior sexual conduct with the victim involving digital-anal penetration and also evidence of prior role-playing in the relationship as part of his consent defense. The trial court denied defendant's request, reasoning that the evidence was not relevant to the charged offense.

Defendant admitted at trial that he had lied to the investigating detective during the investigation about whether he had engaged in anal sex with the victim. After re-direct examination, the trial court questioned defendant further about the reason for his lies. Afterward, defendant moved for a mistrial, arguing that the trial court's questioning, together with a comment made regarding defense counsel, demonstrated judicial bias. The trial court denied the motion, and the jury found defendant guilty. Defendant now appeals to this Court.

## II. ANALYSIS

### A. JUDICIAL BIAS

Defendant first contends that the trial court abused its discretion by failing to grant his motion for a mistrial. Defendant argues that the trial court pierced the veil of judicial impartiality during trial by berating defense counsel in front of the jury and improperly questioning defendant. We disagree.

This Court will not reverse a trial court's decision regarding a motion for mistrial absent an abuse of the trial court's discretion, which occurs when the trial court's decision falls outside the range of principled outcomes. *People v Lane*, 308 Mich App 38, 60; 862 NW2d 446 (2014). A mistrial should be granted only for "an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *Id.* (quotation marks and citations omitted). Whether judicial misconduct denied a defendant a fair trial is a question of constitutional law that is reviewed de novo. *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015).

"Due process requires that an unbiased and impartial decision-maker hear and decide a case." *Kern v Kern-Koskela*, 320 Mich App 212, 231; 905 NW2d 453 (2017) (quotation marks and citation omitted). A trial judge is presumed to be fair and impartial, however, and a party claiming judicial bias must overcome "a heavy presumption of judicial impartiality." *People v Biddles*, 316 Mich App 148, 152; 896 NW2d 461 (2016) (citation omitted). A trial judge's

conduct deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality. *Stevens*, 498 Mich at 170. "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171. Whether the trial court pierced the veil of judicial impartiality is a "fact-specific analysis" that must be determined by considering the totality of the circumstances. *Id*. at 171-172. We do not apply a harmless error analysis to a claim of judicial partiality, and instead determine "whether the judge's conduct improperly influenced the jury without considering the weight of the evidence presented against the aggrieved party or whether the conduct *actually* contributed to the jury's verdict." *Id*. at 171 n 3.

To determine whether a trial judge pierced the veil of judicial impartiality, we consider "a variety of factors, including the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions," as well as any other relevant factors. *Id*. at 172. Judicial misconduct may include "belittling of counsel, inappropriate questioning of witnesses, providing improper strategic advice to a particular side, biased commentary in front of the jury, or a variety of other inappropriate actions." *Id*. at 172-173.

In this case, defendant argues that the trial court demonstrated partiality by berating defense counsel during trial within the hearing of the jury in a way that suggested that counsel was dishonest and using deceptive tactics. Defendant argues this occurred when the trial court stated:

> I want to advise the jury that if either attorney felt that there were items that were unclear on anything, they would have a right to copies[,] they had to have them transcribed by someone they chose and then to have those provided. So to sit here and say that they couldn't hear something is rather disingenuous since those options are always available and the Court provides resources if needed.

Defendant argues that the trial court made this comment to the jury in response to defense counsel's questioning of a detective regarding the audio recording:

> *Defense Counsel*. Okay. You have had an opportunity to listen to the recording from [the victim's] phone prior to yesterday's court hearing?
>
> *Detective*. Yes.
>
> *Defense Counsel*. Okay. And there is [sic] things on that recording that are sort of in the background, maybe hard to hear in this setting?
>
> *Detective*. Possibly.
>
> *Defense Counsel*. Okay. Would you — such as, like words that were said would be easier to hear if you weren't in a big room like this and the circumstances we are listening?

-3-

*Detective*.  Yes.

*Defense Counsel*.  Okay.  And on that recording, it's about a minute or so in before we hear actual sex begin, would you agree with that?

*Detective*.  Yes.

*Defense Counsel*.  Okay.  So—and at the end of the recording you can hear a little bit of conversation after the sex ends?

*Detective*.  Yes.

*Defense Counsel*.  And at the very end you can actually hear the voices get very far from —

*ASSISTANT PROSECUTOR*: Judge, I am going to object to asking the witness to interpret the piece of evidence.  It is an exhibit and it's available for the jury to —

*THE COURT*: What exactly is the point of these questions?

*Defense Counsel*: Just to point out areas of the recording that maybe would be better heard by listening closer to it.

*THE COURT*: I see.  Objection sustained.

Defendant later moved for a mistrial on the basis that the trial court's statement displayed partiality.  In ruling on the motion outside the hearing of the jury, the court indicated its reasoning:

Now, as for your other comment, you continuously use—well, where is this piece of evidence you didn't give me, when you have it in your hands.  You could use whatever techniques you wish to try to ferret out additional commentary that may have been on those tapes.  Instead, you don't do that.  You sit back and make and pretend like they are doing something bad.  All I said is you have the right to do the same things they had and you had an opportunity to see that evidence.  I don't think that's improper.

We disagree that the comment to the jury was a suggestion by the trial court that defense counsel was dishonest or deceptive.  A review of the record indicates that defense counsel had suggested that the recording was incomplete.  During her opening statement, defense counsel asked, "[W]as the recording altered in any way?  And if so, why?  Is everything there?  Are we hearing everything?"  Nor was the comment directed at defense counsel alone.  The record indicates that the prosecutor, who also apparently was concerned about whether the jury could properly hear the recording when it was played, had been admonished by the trial court for adjusting the volume without the court's consent.

The trial court's comment was directed to "either counsel" and indicated that both attorneys had the evidence available to them and nothing precluded either of them from analyzing the data or transcribing any parts of the audio either side considered hard to hear. The trial court's comment was an apt clarification to the jury that neither party had been deprived of the complete audio recording, and the singular use of the word "disingenuous" in this context was not so egregious as to pierce the veil of judicial impartiality. Considering the nature and tone of the comment, the brevity of the comment, and that the comment referenced both counsel, we conclude that the comments, taken as a whole, did not pierce the veil of judicial impartiality.

Defendant also argues that the trial court questioned him in a manner that suggested he was not credible and that there was something wrong with defendant "lawyering up," thereby denying him a fair trial. Again, we disagree.

MRE 614(b) permits the trial court to question witnesses called by itself or by a party. Judicial questioning has boundaries, however. *Stevens*, 498 Mich at 174. "It is inappropriate for a judge to exhibit disbelief of a witness, intentionally or unintentionally," and judges "should avoid questions that are intimidating, argumentative, or skeptical." *Id*. at 174-175. A trial judge demonstrates partiality when he undermines a party's witness and implies that he has his own opinions about witness credibility. See *id*. at 180-183. When the tone and demeanor of the trial court apparent in the lower court record is hostile to a defendant's witness or demonstrates partiality, that fact weighs in favor of granting the defendant a new trial. *Id*. at 187.

In this case, defendant admitted during his testimony that he was asked three times by the investigating detective about whether he had anal intercourse with the victim and lied each time. On direct examination, defendant explained why he had lied to the detective, stating:

> Detective McGuire, she was untruthful to me when she told me that I never gave her my address and invited her to my home to talk to me about what issues she wanted to do the investigation about, and I felt I had probably said too much. She wasn't going to be truthful. It was not going to get me home no time soon. So instead of asking for an attorney—and I had not had my free phone call or was able to use the phone to call an attorney or to call my relatives. Now I am shutting down.

On re-direct examination, when asked why he had continued to lie, defendant answered:

> I didn't want to lawyer up and ask for my attorney. I wanted to hear what I was being charged with. I have never thought that I would be charged with something like this for something that I did not do, and I wanted to hear what she had to say.

After re-direct examination, the trial court questioned defendant further on this point:

> *The Court*. Sir, let me just ask you, you say you didn't want to lawyer up?
>
> *Defendant*. I did not want to ask for an attorney at the time.
>
> *The Court*. Okay. You didn't want to lawyer up then? That's what that means, isn't it?

*Defendant*.  Right.

*The Court*.  Okay.  Didn't you tell that detective that you had a lawyer on the way down there?

*Defendant*.  I did tell her I had an attorney on the way down.  However, I did not want to ask for my attorney to be present because I was not planning on making a statement.

*The Court*: You had a lawyer on the way down to lawyer up?

*Defendant*: Correct.

*The Court*.  So I don't understand when you say you didn't want to lawyer up when you were lawyering up, sir?

*Defendant*.  Okay.  I had not talked to my relatives.  I knew that I would have an attorney coming.  I had not talked to anybody.  I had not had a legal representation coming.

*The Court*.  That isn't what I asked you.  You told me—or you told us that you were lying to the officer because you didn't want to lawyer up, when, in fact, you knew you had a lawyer on the way down there.  I don't understand how your family has anything to do with it.  You knew the lawyer was coming.

*Defendant*.  Because I had talked to my mom when I got arrested.  The officer allowed me to call my mother.

*The Court*.  So you did talk to your mother?

*Defendant*.  I talked to my mom, but I had not talked to her once I hit the county jail.

*The Court*.  I see, but you had had phone calls?

*The Defendant*.  I had one call prior to getting to the county jail.

*The Court*.  Okay.  Thank you.  Any other questions based on that?

It is evident that the trial court was questioning defendant to clarify his testimony.  Defendant's testimony was unclear; he testified that he lied to the detective because he did not want to "lawyer up" at that time.  Upon further questioning by the trial court, defendant confirmed that he had, in fact, already sought an attorney who was on his way to the interrogation, and so he had already effectively "lawyered up."  Contrary to defendant's assertion, there is no indication that the trial court disparaged him for requesting counsel.  The trial court's questioning seems to have been directed toward clarifying defendant's rather confusing assertion that he lied because he did not want to request an attorney, particularly given defendant's admission that he was aware an attorney was on the way and given that the events of

-6-

lying and requesting an attorney would normally seem to bear little relationship to one another. We further note that, again, the trial court's questioning of defendant was limited in duration and scope. We conclude that the trial court's questioning of defendant did not exceed the scope of permissive judicial questioning. See *People v McDonald*, 303 Mich App 424, 437; 844 NW2d 168 (2013). We therefore find that the trial court did not abuse its discretion by denying defendant's motion for mistrial.

## B. SUPPRESSION OF THE AUDIO RECORDING

Defendant next contends that the victim made an audio recording of the sexual encounter without defendant's consent in violation of MCL 750.539d(1)(a), warranting suppression of the recording at trial. We disagree.

We note initially that defendant expressly waived any objection at trial to the admission of the audio recording. Generally, a party may not waive an objection, then argue on appeal that the resultant action was error; rather, the waiver extinguishes any error. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). If the objection had not been waived, however, and merely had been forfeited by counsel's failure to object, we would review the unpreserved claim of error to determine whether the error is plain and affected substantial rights, meaning that it affected the outcome of the proceedings, and it either resulted in the conviction of an innocent person, or seriously affected the fairness, integrity, or public reputation of the proceedings. *Id*. at 505-506. Under either analysis, we conclude that the trial court did not err by admitting the audio recording.

Defendant argues that by recording the sexual encounter, the victim violated Michigan's eavesdropping statutes, MCL 750.539a *et seq*. Specifically, MCL 750.539d(1)(a) provides, in relevant part:

(1) Except as otherwise provided in this section, a person shall not do either of the following:

(a) Install, place, or use in any private place, without the consent of the person or persons entitled to privacy in that place, any device for observing, recording, transmitting, photographing, or eavesdropping upon the sounds or events in that place.

In this case, there is no dispute that the victim placed or used a device for recording, i.e. her phone, in her bedroom.[1] We next consider whether the victim's bedroom was a "private place" within the meaning of the statute, and conclude that it was. MCL 750.539a(1) provides:

---

[1] We note that the victim was not eavesdropping. "Eavesdropping," as defined in MCL 750.539a(2), is limited to the "private discourse of others," and thus a participant in a conversation "may record it without 'eavesdropping' because the conversation is not the 'discourse of others.' " *Lewis v LeGrow*, 258 Mich App 175, 185; 670 NW2d 675 (2003). We

(1)  "Private place" means a place where one may reasonably expect to be safe from casual or hostile intrusion or surveillance but does not include a place to which the public or substantial group of the public has access.

In *Lewis v LeGrow*, 258 Mich App 175, 185; 670 NW2d 675 (2003), this Court stated that "a bedroom in a private home in which a couple engages in intimate relations fulfills the definition of a 'private place' under subsection 539a(1) because reasonable people expect 'to be safe from casual or hostile intrusion' within a bedroom." *Id*. at 188 (citation omitted).  We question, however, if under the circumstances of this case defendant can be a person "entitled to privacy in that place," being a bedroom in the *victim's* home, once he left the realm of consensual activity and embarked upon a felonious assault of the victim.

However, we need not determine the merits of that assertion because we reject defendant's suggestion that if the victim violated MCL 750.539d in recording their sexual encounter, the recording was subject to suppression in defendant's criminal prosecution. Suppression of evidence is not an appropriate remedy for a statutory violation when there is no indication in the statute that the Legislature intended that remedy.  *People v Mazzie*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 343380); slip op at 4.  Accordingly, we hold that suppression would not be an appropriate remedy even if the victim had indeed violated MCL 750.539d.

In his brief on appeal, defendant agrees that the exclusionary rule does not apply to evidence obtained by a private party without state intervention, even if obtained unlawfully, but urges us nonetheless to suppress the evidence as a matter of public policy.  We decline to do so. The exclusionary rule, being the suppression of any unlawfully obtained evidence, is the remedy for a violation of the constitutional prohibition against unreasonable searches.  *People v Cartwright*, 454 Mich 550, 558; 563 NW2d 2018 (1997).  The goal of the exclusionary rule is to deter police misconduct.  *People v Hawkins*, 468 Mich 488, 499; 668 NW2d 602 (2003)  The prohibition against unreasonable searches and seizures, however, does not apply to a search or seizure conducted by a private person not acting as an agent of the government and acting without the government's participation or knowledge.  *Detroit Edison Co v Stenman*, 311 Mich App 367, 387; 875 NW2d 767 (2015); *People v McKendrick*, 188 Mich App 128, 141; 468 NW2d 903 (1991).  Because this Court will not create a remedy that the Legislature chose not to create, see *Hawkins*, 468 Mich at 500, we decline defendant's invitation to extend the exclusionary rule, as a matter of public policy, to the actions of private persons.  We hold that the trial court did not plainly err by allowing the admission of the audio recording as evidence because there was no basis for its suppression.

## C.  EVIDENCE OF PRIOR SEXUAL ACTS

Defendant also contends that the trial court improperly limited his ability to introduce evidence of the victim's past sexual conduct with defendant.  We disagree.

---

further note that MCL 750.539h provides civil remedies for eavesdropping, but not for other conduct prohibited by MCL 750.539d.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Sharpe,* 502 Mich 313, 323; 918 NW2d 504 (2018). An abuse of discretion exists if the trial court's decision falls outside the range of principled outcomes. *Id*. at 324. If a trial court's evidentiary decision involves an underlying question of law, such as whether a statute precludes the admission of evidence, we review such a question de novo. *Id*. An evidentiary error does not merit reversal in a criminal case unless, after an examination of the entire cause, it appears that it is more probable than not that the error was outcome determinative. *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). In addition, the determination of admissibility of evidence under the rape-shield statute is within the sound discretion of the trial court. *People v Hackett,* 421 Mich 338, 349; 365 NW2d 120 (1985). When making a determination under the statute, the trial court should be mindful of the legislative purpose of the statute and favor exclusion of evidence when exclusion will not "unconstitutionally abridge" the defendant's right to confrontation. *Id*.

Defendant argues that he should have been permitted to introduce testimony that the victim had previously permitted digital-anal penetration during their sexual encounters. The trial court determined that such testimony was inadmissible under the rape-shield statute, MCL 750.520j, which provides in relevant part:

> (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted . . . unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

> (a) Evidence of the victim's past sexual conduct with the actor.

Thus, the victim's sexual history with others is generally irrelevant and therefore inadmissible. *People v Adair*, 452 Mich 473, 481; 550 NW2d 505 (1996). But when the evidence in question is evidence of the victim's consensual sexual relations with the defendant, the public policy interests in excluding such evidence are no longer the primary focus, which shifts to materiality and balancing the probative value of such evidence against the prejudicial effect. *Id*. at 481-482. We conclude that the trial court in this case did not abuse its discretion by excluding the evidence that the defendant's past sexual relationship with the victim allegedly included digital-anal penetration. Because the only charged conduct before the trial court was penile-anal penetration, evidence of previous consensual digital-anal penetration was not material to the issue at trial, and the trial court did not abuse its discretion by favoring the exclusion of the evidence.

Defendant also argues that the trial court abused its discretion by denying his request to present evidence that he and the victim had a history of role-playing during consensual sex; defendant argues that this evidence was relevant to support his argument that he believed the victim was role-playing when she told him to stop the penile-anal penetration. Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. *People v Blackston*, 481 Mich 451, 461; 751

NW2d 408 (2008). Further, under the rape shield statute, MCL 750.520j(1)(a), evidence of the victim's past sexual conduct with the actor is not admissible "unless and only to the extent that the judge finds that the . . . proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

Here, the trial court excluded evidence that role-playing had occurred in the past, holding that unless evidence was presented that role-playing had occurred during the act in question, evidence of prior role-playing was irrelevant. As noted, the determination of admissibility of evidence under the rape-shield statute is within the sound discretion of the trial court. *Hackett,* 421 Mich at 349. Mindful of the legislative purpose of the statute, and favoring exclusion of evidence when exclusion will not "unconstitutionally abridge" the defendant's right to confrontation, *id.*, we conclude that the trial court did not abuse its discretion in excluding the evidence.

Affirmed.

/s/ Mark T. Boonstra
/s/ Kathleen Jansen
/s/ Michael F. Gadola

-10-